1                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
2


3    _____

4    RED BEND SOFTWARE, INC.,

5                         Plaintiff,        Civil Action
                                            No. 09-11813-DPW
6    V.
                                            December 2, 2009,
7    GOOGLE, INC.                           10:55 a.m.

8                    Defendant.
     _____
9


10


11            TRANSCRIPT OF SCHEDULING CONFERENCE

12        BEFORE THE HONORABLE DOUGLAS P. WOODLOCK

13             UNITED STATES DISTRICT COURT

14          JOHN J. MOAKLEY U.S. COURTHOUSE

15                 1 COURTHOUSE WAY

16                BOSTON, MA   02210

17


18


19


20
                    DEBRA M. JOYCE, RMR, CRR
21                  Official Court Reporter
                 John J. Moakley U.S. Courthouse
22               1 Courthouse Way, Room 5204
                    Boston, MA   02210
23                    617-737-4410

24


25

```
 1   APPEARANCES:

 2

 3   FOR THE PLAINTIFF:

 4   DANIEL J. CLOHERTY, ESQ.
     Dwyer & Collora LLP
 5   600 Atlantic Avenue
     12th Floor
 6   Boston, MA 02210
     617-371-1000
 7
     ROBERT C. SCHEINFELD, ESQ.
 8   Baker Botts LLP
     30 Rockefeller Plaza
 9   44th Floor
     New York, NY 10012-4498
10   212-408-2512

11   FOR THE DEFENDANT:

12   SUSAN BAKER MANNING, ESQ.
     Bingham McCutchen LLP - DC
13   2020 K Street, NW
     Washington, DC 20006-1806
14   202-373-6000

15   SABIN P. WILLET, ESQ.
     Bingham McCutchen LLP - MA
16   One Federal Street
     Boston, MA 02110-1726
17   617-951-8000

18

19

20

21

22

23

24

25
```

P R O C E E D I N G S

1    (The following proceedings were held in open
2  court before the Honorable Douglas P. Woodlock, United States
3  District Judge, United States District Court, District of
4  Massachusetts, at the John J. Moakley United States Courthouse,
5  1 Courthouse Way, Boston, Massachusetts, on December 2, 2009.)
6    THE CLERK:  The court is now on the record in matter
7  of Red Bend Software, Inc. v. Google, Inc., civil action
8  09-11813.
9    Will counsel please identify themselves for the
10  record.
11    MR. CLOHERTY:  Good afternoon, your Honor.  Daniel
12  Cloherty here on behalf of the plaintiffs.  With me is Rob
13  Scheinfeld from Baker Botts, New York, also for the plaintiffs.
14    MR. SCHEINFELD:  Good morning, your Honor.
15    MR. WILLETT:  Good morning, your Honor.  Sabin Willett
16  of Bingham McCutchen for the defendant Google, Inc.  And I'd
17  like to introduce my partner Susan Baker Manning.
18    I think you have allowed her pro hac vice motion.
19    MS. BAKER MANNING:  Good morning, your Honor.
20    THE COURT:  If you tell me I have, I have.
21    MS. BAKER MANNING:  You have indeed, sir.
22    THE COURT:  All right.  Let me just go back to this.
23  The whole question of scheduling.  One thing I thought about
24  doing but I think I probably can't properly do it is to merge

the preliminary injunction with a trial of the merits.  And I
guess my quick reading of the complaint suggests to me that I
can't do that for Dairy Queen kinds of reasons that some of the
fact-finding is going to be -- have to be jury finding, has to
be preliminarily jury finding.

So then I back up a little bit and say, you know,
what's a reasonable schedule for getting this teed up for
preliminary injunction?  Having in mind you people are very
fast, I'm slow in my capacity to absorb this stuff.

10:58     And I guess I don't really understand why, from Red
Bend's point of view, the Google proposal isn't an
approximation of the square-law response?  Apart from the fact
that it's not yours, what's the problem with it?

MR. SCHEINFELD:  Well, because every day that passes,
your Honor, our client is being irreparably harmed.

THE COURT:  As I get older, I have that feeling of
every day passing being more meaningful.  You know, so we're
all going to have to worry about timing and all of that, but
I'd like the parties to have a fair opportunity to get the
10:58 preliminary injunction kind of done without killing themselves
and me in the Christmas season.

MR. SCHEINFELD:  And that's fair, your Honor.  I just
have a few points to make, if I may.

THE COURT:  Sure.

MR. SCHEINFELD:  The first has to do with delay.

1    Google has known about this since early September.  They have

2    hired a fairly large firm, I'm sure they could --

3              THE COURT:  Baker Botts is a boutique?

4              MR. SCHEINFELD:  No, but the point is that Google is

5    not prejudiced by having an expedited hearing, an earlier

6    hearing.

7              THE COURT:  But this is expedited, too, I have to tell

8    you.  The kind of general Google response seems to me to be --

9    you know, it's moving along in a pretty good clip.

10:59  10              MR. SCHEINFELD:  May I then, your Honor, turn to the

11    irreparable harm, which I think is the most important reason to

12    have the hearing fairly quickly.

13              THE COURT:  All right.

14              MR. SCHEINFELD:  If I may pass up, your Honor, a

15    document I'd like to discuss with you.

16              THE COURT:  Sure.

17              (Pause.)

18              MR. SCHEINFELD:  So, your Honor, this a document that

19    we just retrieved, it's a blog from Google's website.

11:00  20              As we speak, there's dialogue going back and forth by

21    users of the infringing code, and there's confusion by those

22    users.  You'll see that the highlighted entry -- you'll see

23    that at the bottom of the first page somebody is saying, Be

24    careful about the use of this code because a lawsuit has been

25    filed.

1    Then, on the following page, someone is saying, Well,

2  you know, Courgette is open source.  And so I doubt anything

3  will happen.  So I say don't worry about it.  Many people have

4  been using this library.  And the Chromium license will allow

5  you to use it.

6    So there's this give and take.  There's this confusion

7  in the -- and we're very concerned about --

8    THE COURT:  Yes, on the other hand -- not to be too

9  harsh about it, but participants in internet blogs tend to

11:01 10  assume that everything is open source.  And they're slow to

11  understand kind of property law limitations on that.  I'm not

12  sure that I'm going to be guided by the fact that there are out

13  there bloggers or commenters who are, perhaps or perhaps not,

14  misapprehending what the -- what's going on.

15    I'm really talking about what's the fair way of

16  dealing with this?  Let me turn -- because I'm dealing with

17  irreparable harm.  Isn't there a way to monetize that, the

18  irreparable harm that you have?  Let's assume you prevail.

19    MR. SCHEINFELD:  I don't believe there's a way to

11:02 20  monetize that, your Honor, because you're talking about our

21  reputation, our credibility.

22    THE COURT:  Let's assume that you prevail on the

23  preliminary injunction, in which case you get to, perhaps,

24  create your own blog that talks about how Google is pirating

25  this kind of thing.

1    I mean, you know, the question of thrust with parry on

2 the internet in a difference of a month or so, a little more,

3 seems to me to be, as the law goes anyway, not that important.

4    With respect to monetization, you've still got jury

5 claims in here.  Those jury claims presumably are looking for

6 damages.  At some point I won't turn to you and say, But you

7 said how could anyone calculate damages here, your Honor?

8 Because I suspect at some point, if you prevail, you're going

9 to be telling me how they can be calculated.

11:03 10    So when I talk about irreparable harm, something that

11 simply can't be dealt with in any other way, doesn't seem to

12 present itself here.

13    MR. SCHEINFELD:  Well, in the blog -- and I agree that

14 there's only so much we can -- so much credibility we can give

15 to a blogger -- but there is an indication that there are many

16 users out there, and so we're talking about an unquantifiable

17 number of users who are using the code and infringing as we

18 speak.

19    THE COURT:  You may be able to develop that, you will

11:03 20 develop it for, I'm sure, for damages, if it comes to that.

21 The short of it is I don't see this as more than, you know,

22 we'll get to it as promptly as we can, the question is how

23 promptly should that be?  And I'm back to the idea, apart from

24 saying that every day is a new day of their new infringement,

25 why I shouldn't say, Look it, let's do it in a more orderly

fashion?

MR. SCHEINFELD:  I'm not -- your Honor, I could understand doing it in a more orderly fashion, but Google's proposal is just further along the lines of their strategy to delay.  Why wait until February?  Why can't we have the preliminary injunction hearing in mid-January?  That's what --

THE COURT:  Because I have real questions -- without knowing very much about this, I have some real questions about the ability of the parties fully to develop their cases in a fashion that will be helpful to me.  I have a concern about the ability of the parties to fully develop their cases.  I'm just probing to see if there's something here that I'm missing.  I haven't heard anything yet.

MR. SCHEINFELD:  Well, in terms of irreparable harm, again, we're competing, we're losing customers to Google.  And there's a threat of price erosion.  If our customers find out, and they have, that Google's offering as open source free to everybody infringing code, why would anyone come to us?  You know, why would anyone pay us a license for the code that we're --

THE COURT:  Okay.  So you get your preliminary injunction at the end of that, and now you've got people who can't be weaned away from your code, in which case you can charge whatever you charge.

MR. SCHEINFELD:  That's fair.  But, you know, we're

talking about the taint that perhaps would apply to Red Bend

during this period of time where Google is using its muscle and

marketing muscle to advertise to the world that its code is

open.

THE COURT:  Okay.  So, you know, if David has to wait

a bit to bring down Goliath, I'm not sure that's material here.

So I think I understand what your concerns are, and

they're reasonable concerns, I'm just not persuaded that it

justifies what I might call distorting the schedule a bit,

including the schedule for me to be able to absorb these

materials.

MR. SCHEINFELD:  Well, your Honor, I've tried my best.

THE COURT:  Okay.  And you can report to your client

that you did, that you faced an obdurate and unreasonable

judge.

(Discussion off the record.)

THE COURT:  So if we set this -- I'm going to set it

and then work my way back for hearing on the afternoon, let's

say, 2:30 on Wednesday, February 17th.  Do the parties

realistically think they're going to have live testimony here

or want to have live testimony?

MR. SCHEINFELD:  Yes, your Honor.

THE COURT:  Like what?

MR. SCHEINFELD:  We would propose at this point in

time hearing from two of our witnesses, our principal and our

expert.

THE COURT:  What are they going to talk about?

MR. SCHEINFELD:  Well, harm, our principal is going to talk --

THE COURT:  Let me tell you -- why is it that I can't just take your -- take their depositions -- take their affidavits on this?  I always like to make new friends, but I'm not sure that I need to meet them here.

MR. SCHEINFELD:  Well, your Honor could take their declarations, but then we would want the opportunity to cross.

THE COURT:  Let's see what I think about that.  Do you want to press your luck by telling me --

MR. SCHEINFELD:  You're doing so well.

MS. BAKER MANNING:  Well, I will tell you, your Honor, certainly if Red Bend intends to present their witnesses live, I think it would make sense to have live witnesses as well.

THE COURT:  My default on this at this point is declarations or affidavits from the witnesses that you intend to introduce here.

MS. BAKER MANNING:  And would cross be introduced through deposition testimony, your Honor?

THE COURT:  I don't know what cross would be necessary yet.  And what I think I would say is in the argument on the 17th, I'll hear you on the question of whether or not you think it is necessary to have cross-examination.  And then I'll

1    schedule time if I think it's appropriate.  But we're dealing

2    with a preliminary injunction here, and I'm not sure that --

3    because it's not going to be resolved in a final form at this

4    stage that I think that live testimony is going to be that

5    helpful, but I certainly don't know enough about it, that a

6    kind of desire of your clients to speak in open court is not

7    enough for me, and the chance to practice cross-examination

8    skills is not enough for me either.

9         So it's got to be something that tells me it's going

11:10 10    to be material to my disposition of the matter that couldn't

11    fairly have been anticipated by the parties here.

12         I view live testimony generally as important for

13    purposes of dealing with witnesses' credibility, and I'm not

14    sure credibility is going to be that much of an issue here.

15    Maybe it will, I don't know.  Won't be the first time I'm

16    surprised, but the time at which I'll make a determination

17    about that I think is going to be at the hearing on this.

18         So what I'm carving out is, as I said, 2:30 on

19    February 17th.

11:10 20         That then, I think, works us back here, just using the

21    time frame that Google has in its, I think, reply, so Google --

22    let's see --

23         MS. BAKER MANNING:  We had proposed, your Honor,

24    anticipating a hearing the week of the February 15th, which is

25    where we are.  We had suggested we file an opposition on

1    January 29th, which I believe is a Friday.

2        THE COURT:  Okay.  So January 29th for the opposition.

3   Here the parties' depositions' schedule and production of

4   document schedule I don't understand -- apart from wanting to

5   expedite it more on the part of Red Bend, I don't see that as a

6   problem.  Is it?

7        MR. SCHEINFELD:  No, it's not, your Honor.  But if I

8   may address the time of Google's opposition.  If that's the

9   case, your Honor, we would only have six days to file a reply,

11:12 10   and we would -- I would like more time to do that.  I'm not

11   suggesting that we push back the hearing.  What I'd like to

12   have is Google's opposition due a week or two earlier than

13   January 29th to give Red Bend time to reply, more time to

14   reply.

15        THE COURT:  So what you had the last time under your

16   proposal is nine days?

17        MR. SCHEINFELD:  That's correct, your Honor.

18        THE COURT:  Okay.  The 25th, January 25th for Google's

19   opposition to the motion for preliminary injunction.  But in

11:13 20   terms of the document production and that sort of thing, the

21   development of time periods, do I have to impose one or do you

22   think you can work it out without coming back to me?

23        MR. SCHEINFELD:  I think we'll be able to work that

24   out.

25        MS. BAKER MANNING:  There is one issue I would like to

address.  There is -- we have asked for the production of

documents that would support or tend to refute the allegations,

the factual allegations made in the PI motion.  The response we

got was that they were willing to do so but in return they

wanted all documents re: Courgette, which is the name of the

allegedly infringing product.  They wanted all documents about

themselves, which would be, I take it, from any division of

Google, not just the division where this product resides.  The

allegedly infringing algorithm is used to update the Chrome web

browser, it's not used for anything else.  So to the extent

that division might have anything about Red Bend, I can see why

that might be relevant at a later point once discovery is open.

But I don't think there's any call for us to be producing

documents to Red Bend at the outset of the case -- they've

already filed their preliminary injunction motion.  It doesn't

seem to make any sense why they get additional discovery while

we're preparing an opposition to further support the motion

that they've already filed, and presumably have -- at least

they feel that they have adequately supported.

          THE COURT:  Why not?  I don't see that at all.

          I guess my view generally is, you know, you're

constrained by the time period.  I'm not interested in the

kinds of burdensome discovery that sometimes is imposed, but,

you know, I'm not sure that I think that without knowing how

Google organizes its documents or divisions or subsets that

1  just limiting it to Chromium is necessarily successful.

2        Now, but I don't want to have people spending a lot of

3  time on, you know, electronic discovery and that kind of stuff.

4  So what I want is just common sense about it.  That's all.

5        MR. SCHEINFELD:  Well, your Honor --

6        THE COURT:  It's not proscribed.  I suspect that you

7  should be able to find pretty quickly at the division and above

8  level the degree to which there were some discussions relevant

9  to this case and the issues in this case by persons at Google

11:16 10  who may not be resident in the Chromium division.  So I'm not

11  putting a constraint on it.

12        On the other hand, nobody is going to spend the rest

13  of their life or until January 25th looking for documents

14  hither and yon that may incidentally reference Red Bend.  But

15  if there's anybody who has a search engine --

16        MS. BAKER MANNING:  Yes, sir.

17        THE COURT:  Okay.

18        MR. SCHEINFELD:  If I could address that point, your

19  Honor.

11:16 20        I think there are other divisions in Google that not

21  only will have documents about Red Bend, but we have reason to

22  believe that they knew about it --

23        THE COURT:  Then tell them about -- apart from telling

24  me --

25        MR. SCHEINFELD:  Android.

 1        THE COURT:  -- why it is you want them and be

 2   reasonable in your request here.  I do think the time frame

 3   kind of correctly constrains the parties, and, you know, kind

 4   of wholesale discovery.  You know, I'm not imposing a restraint

 5   on just the Chromium division; on the other hand, it has to be

 6   pretty pertinent to the issues.

 7        MR. SCHEINFELD:  If I may address that, your Honor, I

 8   think it's fairly important.  Our Red Bend principals or Red

 9   Bend people met with Google in 2008.  It was another division,

11:17 10  but we have reason to believe that --

 11        THE COURT:  Okay.  So you'll tell them where it is

 12   that you think things would be found that are important.  But

 13   they aren't going to be required to search every division of

 14   Google to find this information, unless there's some reason to

 15   believe that it might be resident.

 16        MR. SCHEINFELD:  Thank you, your Honor, that will be

 17   fine.

 18        If I may also address a time in which Red Bend will

 19   have to submit its reply.  I didn't get a date, your Honor.  I

11:18 20  have January 25th --

 21        THE COURT:  February 5th, because I took your schedule

 22   and backed it up to give them -- to give you nine days to

 23   respond, or reply to their opposition.

 24        Now -- so back to the discovery schedule.  I mean, if

 25   you want -- if I should, I will impose some time frame for it.

1    I don't want to do that, because you're going to, I suspect, be

2    doing discovery right up to January 24th.

3            MR. SCHEINFELD:  I think --

4            MS. BAKER MANNING:  Hopefully not quite that late.

5            MR. SCHEINFELD:  I hope we can work it out.  I would

6    propose we have a date we mutually exchange documents that we

7    each believe are relevant to the issues.

8            THE COURT:  Okay.  December 22nd, if it's not done

9    before then.  My view is that it should be being done now, but

11:19 10    that's the final date for the production of documents.

11            MS. BAKER MANNING:  I will tell you we'll have to work

12    out what's relevant.  We believe quite strongly that the

13    Android -- the Android products are not accused in this case,

14    they have nothing to do in this case, according to the

15    allegations that have been made.  I have very serious concerns

16    about fishing through Android and dramatically increasing --

17            THE COURT:  Okay.  If you want to come back, this has

18    been a pleasant conversation.  I don't think coming back will

19    be so pleasant if I sense that anybody is being unreasonable

11:19 20    about this.

21            Did they negotiate with Android?

22            MS. BAKER MANNING:  There have been discussions with

23    Android --

24            THE COURT:  Okay.  So let me just tell you something.

25    My view is that's likely to be relevant, and they're likely to

get that information.  So if this is a backdoor way of saying
that, when I rather gently suggested that it's not limited to
the Chromium division, you're trying to limit it to the
Chromium division, don't try it.  Okay?

MS. BAKER MANNING:  Appreciate it, your Honor.

THE COURT:  All right.  So we've got, I think, some
general understanding that we'll work out the details with a
view toward getting everything done by way of discovery by no
later than the filing of an opposition by Google, which is
January 25th.  And that the documents will be produced finally
by December 22nd, but I expect rolling document production here
by the parties rather than just a dump on December 22nd.

So I think that deals with the preliminary injunction.

Now, I've got this motion to dismiss that's been
filed.

What's the theory of indirect infringement?  Is it the
bloggers?  Is that what it is?

MR. SCHEINFELD:  Well, it's the indirect infringement,
it's Google's inducement of others to infringe directly and
contributorily as well.

THE COURT:  Okay.  So who is that, the bloggers or
people who use Chromium?

MR. SCHEINFELD:  Developers, not just bloggers, it's
the developers, people who are developing their own code for
other uses outside Chrome.

1          THE COURT:  What do you know about that?

2          MR. SCHEINFELD:  Well, we have evidence that there are

3     people who are using, using the --

4          THE COURT:  What do you have about developers?

5          MR. SCHEINFELD:  Well, your Honor, I have no evidence,

6     as I sit here today, that a developer is generating Courgette

7     source code.  But that's the whole purpose of open source.

8     They're telling the community that go ahead and use this, you

9     know, use this, it's open to you to use.

11:22 10        THE COURT:  Well, there is, from my perspective, not a

11    little bit of an issue with respect to the motion to dismiss

12    here as to those that you cannot at this point provide me with

13    a plausible identification.  When I say "identification," I

14    don't mean developers or the development community.  I mean

15    PhistucK, P-h-i-s-t-u-K, capital K at the end, being one of

16    them who is a blogger who seems, you know, sensitive to your

17    concerns.

18         MR. SCHEINFELD:  Right.  And there are other bloggers

19    who are --

11:22 20        THE COURT:  Okay.  But the short of it is, this isn't

21    going to be the occasion -- I'm not suggesting limited

22    discovery, but this is not the occasion to fish for developers

23    who are using it.  The core of this case is not, it strikes me,

24    how they're making it available to -- through open source, but

25    a more meaningful identification of their actions that

1  constitute infringement.

2          MR. SCHEINFELD:  Of Google's actions.

3          THE COURT:  Right.

4          MR. SCHEINFELD:  Certainly Google using Courgette

5  itself is directly infringing.

6          THE COURT:  That's what we're really going to be

7  looking at.  I wouldn't spend a lot of time or do a lot of

8  fishing here on this, and I will look at the motion to dismiss,

9  but I will afford you an opportunity to amend your complaint

11:23 10  after we have the preliminary injunction hearing.

11          MR. SCHEINFELD:  Your Honor, I was going to offer --

12  to avoid motion practice, I was going to offer, even though we

13  don't agree with Google's motion, that we will amend the

14  complaint.

15          THE COURT:  Okay.  So when?

16          MR. SCHEINFELD:  We could amend it, as your Honor

17  suggested, it could be after the preliminary injunction

18  hearing.

19          THE COURT:  Well, I don't --

11:24 20          MR. SCHEINFELD:  We could do it whenever your Honor

21  wishes.

22          THE COURT:  I'm sure you can, but the question is

23  what's a good time to do it?  I don't want the motion practice

24  either.  The focus of this preliminary injunction is going to

25  be on direct infringement, as far as I can see, and spiced up

1   with demonstrations of how it's clear that they've directly

2   infringed through facilitating activities by others who might

3   be engaged in indirect infringement.  But we'll kind of see

4   what's standing or what's left after the preliminary injunction

5   hearing.

6         So I'm denying the motion to dismiss without prejudice

7   to it being reasserted after the preliminary injunction

8   hearing.

9         MR. SCHEINFELD:  Thank you, your Honor.

11:24 10         THE COURT:  Okay.  Now, anything else that we need to

11   talk about?

12         MR. SCHEINFELD:  Not from Red Bend, your Honor.

13         THE COURT:  Okay.  All right.  So I will see you on

14   the 17th.

15         MR. SCHEINFELD:  Thank you very much.

16         THE COURT:  Thank you.

17         (Court adjourned at 11:25 p.m.)

18         - - - - - - - - - - - -

19               CERTIFICATION

20         I certify that the foregoing is a correct transcript

21   of the record of proceedings in the above-entitled matter to

22   the best of my skill and ability.

23

24   /s/Debra M. Joyce          December 3, 2009
       Debra M. Joyce, RMR, CRR     Date

25   Official Court Reporter