# EXHIBIT 1

Dockets.Justia.com

1                   UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2

3  _____

4  RED BEND SOFTWARE, INC.,

5                  Plaintiff,      Civil Action
                                No. 09-11813-DPW

6  v.
                                December 2, 2009,

7  GOOGLE, INC.                         10:55 a.m.

8                  Defendant.

9  _____

10

11              TRANSCRIPT OF SCHEDULING CONFERENCE

12           BEFORE THE HONORABLE DOUGLAS P. WOODLOCK

13              UNITED STATES DISTRICT COURT

14           JOHN J. MOAKLEY U.S. COURTHOUSE

15                 1 COURTHOUSE WAY

16                 BOSTON, MA  02210

17

18

19

20

21             DEBRA M. JOYCE, RMR, CRR
             Official Court Reporter

22        John J. Moakley U.S. Courthouse
       1 Courthouse Way, Room 5204

23            Boston, MA  02210
             617-737-4410

24

25

```
 1   APPEARANCES:

 2


 3   FOR THE PLAINTIFF:

 4   DANIEL J. CLOHERTY, ESQ.
     Dwyer & Collora LLP
 5   600 Atlantic Avenue
     12th Floor
 6   Boston, MA 02210
     617-371-1000
 7
     ROBERT C. SCHEINFELD, ESQ.
 8   Baker Botts LLP
     30 Rockefeller Plaza
 9   44th Floor
     New York, NY 10012-4498
10   212-408-2512

11   FOR THE DEFENDANT:

12   SUSAN BAKER MANNING, ESQ.
     Bingham McCutchen LLP - DC
13   2020 K Street, NW
     Washington, DC 20006-1806
14   202-373-6000

15   SABIN P. WILLET, ESQ.
     Bingham McCutchen LLP - MA
16   One Federal Street
     Boston, MA 02110-1726
17   617-951-8000

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S

 2                    (The following proceedings were held in open

 3       court before the Honorable Douglas P. Woodlock, United States

 4       District Judge, United States District Court, District of

 5       Massachusetts, at the John J. Moakley United States Courthouse,

 6       1 Courthouse Way, Boston, Massachusetts, on December 2, 2009.)

 7                    THE CLERK:  The court is now on the record in matter

 8       of Red Bend Software, Inc. v. Google, Inc., civil action

 9       09-11813.
```

10:56 10     Will counsel please identify themselves for the

```
11       record.

12                    MR. CLOHERTY:  Good afternoon, your Honor.  Daniel

13       Cloherty here on behalf of the plaintiffs.  With me is Rob

14       Scheinfeld from Baker Botts, New York, also for the plaintiffs.

15                    MR. SCHEINFELD:  Good morning, your Honor.

16                    MR. WILLETT:  Good morning, your Honor.  Sabin Willett

17       of Bingham McCutchen for the defendant Google, Inc.  And I'd

18       like to introduce my partner Susan Baker Manning.

19                    I think you have allowed her pro hac vice motion.
```

10:56 20     MS. BAKER MANNING:  Good morning, your Honor.

```
21                    THE COURT:  If you tell me I have, I have.

22                    MS. BAKER MANNING:  You have indeed, sir.

23                    THE COURT:  All right.  Let me just go back to this.

24       The whole question of scheduling.  One thing I thought about

25       doing but I think I probably can't properly do it is to merge
```

1    the preliminary injunction with a trial of the merits.  And I

2    guess my quick reading of the complaint suggests to me that I

3    can't do that for Dairy Queen kinds of reasons that some of the

4    fact-finding is going to be -- have to be jury finding, has to

5    be preliminarily jury finding.

6        So then I back up a little bit and say, you know,

7    what's a reasonable schedule for getting this teed up for

8    preliminary injunction?  Having in mind you people are very

9    fast, I'm slow in my capacity to absorb this stuff.

10:58 10       And I guess I don't really understand why, from Red

11   Bend's point of view, the Google proposal isn't an

12   approximation of the square-law response?  Apart from the fact

13   that it's not yours, what's the problem with it?

14       MR. SCHEINFELD:  Well, because every day that passes,

15   your Honor, our client is being irreparably harmed.

16       THE COURT:  As I get older, I have that feeling of

17   every day passing being more meaningful.  You know, so we're

18   all going to have to worry about timing and all of that, but

19   I'd like the parties to have a fair opportunity to get the

10:58 20  preliminary injunction kind of done without killing themselves

21   and me in the Christmas season.

22       MR. SCHEINFELD:  And that's fair, your Honor.  I just

23   have a few points to make, if I may.

24       THE COURT:  Sure.

25       MR. SCHEINFELD:  The first has to do with delay.

Google has known about this since early September.  They have

hired a fairly large firm, I'm sure they could --

THE COURT:  Baker Botts is a boutique?

MR. SCHEINFELD:  No, but the point is that Google is

not prejudiced by having an expedited hearing, an earlier

hearing.

THE COURT:  But this is expedited, too, I have to tell

you.  The kind of general Google response seems to me to be --

you know, it's moving along in a pretty good clip.

MR. SCHEINFELD:  May I then, your Honor, turn to the

irreparable harm, which I think is the most important reason to

have the hearing fairly quickly.

THE COURT:  All right.

MR. SCHEINFELD:  If I may pass up, your Honor, a

document I'd like to discuss with you.

THE COURT:  Sure.

(Pause.)

MR. SCHEINFELD:  So, your Honor, this a document that

we just retrieved, it's a blog from Google's website.

As we speak, there's dialogue going back and forth by

users of the infringing code, and there's confusion by those

users.  You'll see that the highlighted entry -- you'll see

that at the bottom of the first page somebody is saying, Be

careful about the use of this code because a lawsuit has been

filed.

1      Then, on the following page, someone is saying, Well,

2  you know, Courgette is open source.  And so I doubt anything

3  will happen.  So I say don't worry about it.  Many people have

4  been using this library.  And the Chromium license will allow

5  you to use it.

6      So there's this give and take.  There's this confusion

7  in the -- and we're very concerned about --

8      THE COURT:  Yes, on the other hand -- not to be too

9  harsh about it, but participants in internet blogs tend to

11:01 10  assume that everything is open source.  And they're slow to

11  understand kind of property law limitations on that.  I'm not

12  sure that I'm going to be guided by the fact that there are out

13  there bloggers or commenters who are, perhaps or perhaps not,

14  misapprehending what the -- what's going on.

15      I'm really talking about what's the fair way of

16  dealing with this?  Let me turn -- because I'm dealing with

17  irreparable harm.  Isn't there a way to monetize that, the

18  irreparable harm that you have?  Let's assume you prevail.

19      MR. SCHEINFELD:  I don't believe there's a way to

11:02 20  monetize that, your Honor, because you're talking about our

21  reputation, our credibility.

22      THE COURT:  Let's assume that you prevail on the

23  preliminary injunction, in which case you get to, perhaps,

24  create your own blog that talks about how Google is pirating

25  this kind of thing.

1    I mean, you know, the question of thrust with parry on

2    the internet in a difference of a month or so, a little more,

3    seems to me to be, as the law goes anyway, not that important.

4    With respect to monetization, you've still got jury

5    claims in here.  Those jury claims presumably are looking for

6    damages.  At some point I won't turn to you and say, But you

7    said how could anyone calculate damages here, your Honor?

8    Because I suspect at some point, if you prevail, you're going

9    to be telling me how they can be calculated.

11:03 10    So when I talk about irreparable harm, something that

11    simply can't be dealt with in any other way, doesn't seem to

12    present itself here.

13    MR. SCHEINFELD:  Well, in the blog -- and I agree that

14    there's only so much we can -- so much credibility we can give

15    to a blogger -- but there is an indication that there are many

16    users out there, and so we're talking about an unquantifiable

17    number of users who are using the code and infringing as we

18    speak.

19    THE COURT:  You may be able to develop that, you will

11:03 20    develop it for, I'm sure, for damages, if it comes to that.

21    The short of it is I don't see this as more than, you know,

22    we'll get to it as promptly as we can, the question is how

23    promptly should that be?  And I'm back to the idea, apart from

24    saying that every day is a new day of their new infringement,

25    why I shouldn't say, Look it, let's do it in a more orderly

fashion?

MR. SCHEINFELD:  I'm not -- your Honor, I could understand doing it in a more orderly fashion, but Google's proposal is just further along the lines of their strategy to delay.  Why wait until February?  Why can't we have the preliminary injunction hearing in mid-January?  That's what --

THE COURT:  Because I have real questions -- without knowing very much about this, I have some real questions about the ability of the parties fully to develop their cases in a fashion that will be helpful to me.  I have a concern about the ability of the parties to fully develop their cases.  I'm just probing to see if there's something here that I'm missing.  I haven't heard anything yet.

MR. SCHEINFELD:  Well, in terms of irreparable harm, again, we're competing, we're losing customers to Google.  And there's a threat of price erosion.  If our customers find out, and they have, that Google's offering as open source free to everybody infringing code, why would anyone come to us?  You know, why would anyone pay us a license for the code that we're --

THE COURT:  Okay.  So you get your preliminary injunction at the end of that, and now you've got people who can't be weaned away from your code, in which case you can charge whatever you charge.

MR. SCHEINFELD:  That's fair.  But, you know, we're

1  talking about the taint that perhaps would apply to Red Bend

2  during this period of time where Google is using its muscle and

3  marketing muscle to advertise to the world that its code is

4  open.

5        THE COURT:  Okay.  So, you know, if David has to wait

6  a bit to bring down Goliath, I'm not sure that's material here.

7        So I think I understand what your concerns are, and

8  they're reasonable concerns, I'm just not persuaded that it

9  justifies what I might call distorting the schedule a bit,

11:06 10  including the schedule for me to be able to absorb these

11  materials.

12        MR. SCHEINFELD:  Well, your Honor, I've tried my best.

13        THE COURT:  Okay.  And you can report to your client

14  that you did, that you faced an obdurate and unreasonable

15  judge.

16        (Discussion off the record.)

17        THE COURT:  So if we set this -- I'm going to set it

18  and then work my way back for hearing on the afternoon, let's

19  say, 2:30 on Wednesday, February 17th.  Do the parties

11:07 20  realistically think they're going to have live testimony here

21  or want to have live testimony?

22        MR. SCHEINFELD:  Yes, your Honor.

23        THE COURT:  Like what?

24        MR. SCHEINFELD:  We would propose at this point in

25  time hearing from two of our witnesses, our principal and our

1    expert.

2              THE COURT:  What are they going to talk about?

3              MR. SCHEINFELD:  Well, harm, our principal is going to

4    talk --

5              THE COURT:  Let me tell you -- why is it that I can't

6    just take your -- take their depositions -- take their

7    affidavits on this?  I always like to make new friends, but I'm

8    not sure that I need to meet them here.

9              MR. SCHEINFELD:  Well, your Honor could take their

11:08 10   declarations, but then we would want the opportunity to cross.

11             THE COURT:  Let's see what I think about that.  Do you

12   want to press your luck by telling me --

13             MR. SCHEINFELD:  You're doing so well.

14             MS. BAKER MANNING:  Well, I will tell you, your Honor,

15   certainly if Red Bend intends to present their witnesses live,

16   I think it would make sense to have live witnesses as well.

17             THE COURT:  My default on this at this point is

18   declarations or affidavits from the witnesses that you intend

19   to introduce here.

11:09 20             MS. BAKER MANNING:  And would cross be introduced

21   through deposition testimony, your Honor?

22             THE COURT:  I don't know what cross would be necessary

23   yet.  And what I think I would say is in the argument on the

24   17th, I'll hear you on the question of whether or not you think

25   it is necessary to have cross-examination.  And then I'll

schedule time if I think it's appropriate.  But we're dealing

with a preliminary injunction here, and I'm not sure that --

because it's not going to be resolved in a final form at this

stage that I think that live testimony is going to be that

helpful, but I certainly don't know enough about it, that a

kind of desire of your clients to speak in open court is not

enough for me, and the chance to practice cross-examination

skills is not enough for me either.

So it's got to be something that tells me it's going

to be material to my disposition of the matter that couldn't

fairly have been anticipated by the parties here.

I view live testimony generally as important for

purposes of dealing with witnesses' credibility, and I'm not

sure credibility is going to be that much of an issue here.

Maybe it will, I don't know.  Won't be the first time I'm

surprised, but the time at which I'll make a determination

about that I think is going to be at the hearing on this.

So what I'm carving out is, as I said, 2:30 on

February 17th.

That then, I think, works us back here, just using the

time frame that Google has in its, I think, reply, so Google --

let's see --

MS. BAKER MANNING:  We had proposed, your Honor,

anticipating a hearing the week of the February 15th, which is

where we are.  We had suggested we file an opposition on

1  January 29th, which I believe is a Friday.

2      THE COURT:  Okay.  So January 29th for the opposition.

3  Here the parties' depositions' schedule and production of

4  document schedule I don't understand -- apart from wanting to

5  expedite it more on the part of Red Bend, I don't see that as a

6  problem.  Is it?

7      MR. SCHEINFELD:  No, it's not, your Honor.  But if I

8  may address the time of Google's opposition.  If that's the

9  case, your Honor, we would only have six days to file a reply,

11:12 10  and we would -- I would like more time to do that.  I'm not

11  suggesting that we push back the hearing.  What I'd like to

12  have is Google's opposition due a week or two earlier than

13  January 29th to give Red Bend time to reply, more time to

14  reply.

15      THE COURT:  So what you had the last time under your

16  proposal is nine days?

17      MR. SCHEINFELD:  That's correct, your Honor.

18      THE COURT:  Okay.  The 25th, January 25th for Google's

19  opposition to the motion for preliminary injunction.  But in

11:13 20  terms of the document production and that sort of thing, the

21  development of time periods, do I have to impose one or do you

22  think you can work it out without coming back to me?

23      MR. SCHEINFELD:  I think we'll be able to work that

24  out.

25      MS. BAKER MANNING:  There is one issue I would like to

address.  There is -- we have asked for the production of
documents that would support or tend to refute the allegations,
the factual allegations made in the PI motion.  The response we
got was that they were willing to do so but in return they
wanted all documents re: Courgette, which is the name of the
allegedly infringing product.  They wanted all documents about
themselves, which would be, I take it, from any division of
Google, not just the division where this product resides.  The
allegedly infringing algorithm is used to update the Chrome web
browser, it's not used for anything else.  So to the extent
that division might have anything about Red Bend, I can see why
that might be relevant at a later point once discovery is open.
But I don't think there's any call for us to be producing
documents to Red Bend at the outset of the case -- they've
already filed their preliminary injunction motion.  It doesn't
seem to make any sense why they get additional discovery while
we're preparing an opposition to further support the motion
that they've already filed, and presumably have -- at least
they feel that they have adequately supported.

THE COURT:  Why not?  I don't see that at all.

I guess my view generally is, you know, you're
constrained by the time period.  I'm not interested in the
kinds of burdensome discovery that sometimes is imposed, but,
you know, I'm not sure that I think that without knowing how
Google organizes its documents or divisions or subsets that

just limiting it to Chromium is necessarily successful.

Now, but I don't want to have people spending a lot of time on, you know, electronic discovery and that kind of stuff. So what I want is just common sense about it. That's all.

MR. SCHEINFELD: Well, your Honor --

THE COURT: It's not proscribed. I suspect that you should be able to find pretty quickly at the division and above level the degree to which there were some discussions relevant to this case and the issues in this case by persons at Google who may not be resident in the Chromium division. So I'm not putting a constraint on it.

On the other hand, nobody is going to spend the rest of their life or until January 25th looking for documents hither and yon that may incidentally reference Red Bend. But if there's anybody who has a search engine --

MS. BAKER MANNING: Yes, sir.

THE COURT: Okay.

MR. SCHEINFELD: If I could address that point, your Honor.

I think there are other divisions in Google that not only will have documents about Red Bend, but we have reason to believe that they knew about it --

THE COURT: Then tell them about -- apart from telling me --

MR. SCHEINFELD: Android.

1      THE COURT:  -- why it is you want them and be

2  reasonable in your request here.  I do think the time frame

3  kind of correctly constrains the parties, and, you know, kind

4  of wholesale discovery.  You know, I'm not imposing a restraint

5  on just the Chromium division; on the other hand, it has to be

6  pretty pertinent to the issues.

7      MR. SCHEINFELD:  If I may address that, your Honor, I

8  think it's fairly important.  Our Red Bend principals or Red

9  Bend people met with Google in 2008.  It was another division,

11:17 10  but we have reason to believe that --

11      THE COURT:  Okay.  So you'll tell them where it is

12  that you think things would be found that are important.  But

13  they aren't going to be required to search every division of

14  Google to find this information, unless there's some reason to

15  believe that it might be resident.

16      MR. SCHEINFELD:  Thank you, your Honor, that will be

17  fine.

18      If I may also address a time in which Red Bend will

19  have to submit its reply.  I didn't get a date, your Honor.  I

11:18 20  have January 25th --

21      THE COURT:  February 5th, because I took your schedule

22  and backed it up to give them -- to give you nine days to

23  respond, or reply to their opposition.

24      Now -- so back to the discovery schedule.  I mean, if

25  you want -- if I should, I will impose some time frame for it.

1    I don't want to do that, because you're going to, I suspect, be

2    doing discovery right up to January 24th.

3              MR. SCHEINFELD:  I think --

4              MS. BAKER MANNING:  Hopefully not quite that late.

5              MR. SCHEINFELD:  I hope we can work it out.  I would

6    propose we have a date we mutually exchange documents that we

7    each believe are relevant to the issues.

8              THE COURT:  Okay.  December 22nd, if it's not done

9    before then.  My view is that it should be being done now, but

11:19 10   that's the final date for the production of documents.

11             MS. BAKER MANNING:  I will tell you we'll have to work

12   out what's relevant.  We believe quite strongly that the

13   Android -- the Android products are not accused in this case,

14   they have nothing to do in this case, according to the

15   allegations that have been made.  I have very serious concerns

16   about fishing through Android and dramatically increasing --

17             THE COURT:  Okay.  If you want to come back, this has

18   been a pleasant conversation.  I don't think coming back will

19   be so pleasant if I sense that anybody is being unreasonable

11:19 20   about this.

21             Did they negotiate with Android?

22             MS. BAKER MANNING:  There have been discussions with

23   Android --

24             THE COURT:  Okay.  So let me just tell you something.

25   My view is that's likely to be relevant, and they're likely to

1   get that information.  So if this is a backdoor way of saying
2   that, when I rather gently suggested that it's not limited to
3   the Chromium division, you're trying to limit it to the
4   Chromium division, don't try it.  Okay?

5            MS. BAKER MANNING:  Appreciate it, your Honor.

6            THE COURT:  All right.  So we've got, I think, some
7   general understanding that we'll work out the details with a
8   view toward getting everything done by way of discovery by no
9   later than the filing of an opposition by Google, which is
11:20 10  January 25th.  And that the documents will be produced finally
11  by December 22nd, but I expect rolling document production here
12  by the parties rather than just a dump on December 22nd.

13            So I think that deals with the preliminary injunction.

14            Now, I've got this motion to dismiss that's been
15  filed.

16            What's the theory of indirect infringement?  Is it the
17  bloggers?  Is that what it is?

18            MR. SCHEINFELD:  Well, it's the indirect infringement,
19  it's Google's inducement of others to infringe directly and
11:21 20  contributorily as well.

21            THE COURT:  Okay.  So who is that, the bloggers or
22  people who use Chromium?

23            MR. SCHEINFELD:  Developers, not just bloggers, it's
24  the developers, people who are developing their own code for
25  other uses outside Chrome.

1    THE COURT:  What do you know about that?

2    MR. SCHEINFELD:  Well, we have evidence that there are

3    people who are using, using the --

4    THE COURT:  What do you have about developers?

5    MR. SCHEINFELD:  Well, your Honor, I have no evidence,

6    as I sit here today, that a developer is generating Courgette

7    source code.  But that's the whole purpose of open source.

8    They're telling the community that go ahead and use this, you

9    know, use this, it's open to you to use.

11:22 10    THE COURT:  Well, there is, from my perspective, not a

11    little bit of an issue with respect to the motion to dismiss

12    here as to those that you cannot at this point provide me with

13    a plausible identification.  When I say "identification," I

14    don't mean developers or the development community.  I mean

15    PhistucK, P-h-i-s-t-u-K, capital K at the end, being one of

16    them who is a blogger who seems, you know, sensitive to your

17    concerns.

18    MR. SCHEINFELD:  Right.  And there are other bloggers

19    who are --

11:22 20    THE COURT:  Okay.  But the short of it is, this isn't

21    going to be the occasion -- I'm not suggesting limited

22    discovery, but this is not the occasion to fish for developers

23    who are using it.  The core of this case is not, it strikes me,

24    how they're making it available to -- through open source, but

25    a more meaningful identification of their actions that

```
 1   constitute infringement.
 2              MR. SCHEINFELD:  Of Google's actions.
 3              THE COURT:  Right.
 4              MR. SCHEINFELD:  Certainly Google using Courgette
 5   itself is directly infringing.
 6              THE COURT:  That's what we're really going to be
 7   looking at.  I wouldn't spend a lot of time or do a lot of
 8   fishing here on this, and I will look at the motion to dismiss,
 9   but I will afford you an opportunity to amend your complaint
10   after we have the preliminary injunction hearing.
11             MR. SCHEINFELD:  Your Honor, I was going to offer --
12   to avoid motion practice, I was going to offer, even though we
13   don't agree with Google's motion, that we will amend the
14   complaint.
15             THE COURT:  Okay.  So when?
16             MR. SCHEINFELD:  We could amend it, as your Honor
17   suggested, it could be after the preliminary injunction
18   hearing.
19             THE COURT:  Well, I don't --
20             MR. SCHEINFELD:  We could do it whenever your Honor
21   wishes.
22             THE COURT:  I'm sure you can, but the question is
23   what's a good time to do it?  I don't want the motion practice
24   either.  The focus of this preliminary injunction is going to
25   be on direct infringement, as far as I can see, and spiced up
```

with demonstrations of how it's clear that they've directly

infringed through facilitating activities by others who might

be engaged in indirect infringement.  But we'll kind of see

what's standing or what's left after the preliminary injunction

hearing.

So I'm denying the motion to dismiss without prejudice

to it being reasserted after the preliminary injunction

hearing.

MR. SCHEINFELD:  Thank you, your Honor.

THE COURT:  Okay.  Now, anything else that we need to

talk about?

MR. SCHEINFELD:  Not from Red Bend, your Honor.

THE COURT:  Okay.  All right.  So I will see you on

the 17th.

MR. SCHEINFELD:  Thank you very much.

THE COURT:  Thank you.

(Court adjourned at 11:25 p.m.)

- - - - - - - - - - - -

CERTIFICATION

I certify that the foregoing is a correct transcript

of the record of proceedings in the above-entitled matter to

the best of my skill and ability.


/s/Debra M. Joyce                    December 3, 2009
Debra M. Joyce, RMR, CRR             Date
Official Court Reporter