EXHIBIT C

Priority ✓
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARA TECHNOLOGY, INC., | NO. CV 05-01890-CBM (SSx) |
| Plaintiff, | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF KARA TECHNOLOGY'S MOTION FOR A PROTECTIVE ORDER |
| v. | |
| STAMPS.COM, INC., | |
| Defendant. | |

I. INTRODUCTION

On July 8, 2005, Plaintiff Kara Technology, Inc. ("Plaintiff") filed a Motion for a Protective Order. In connection with the Motion, Plaintiff and Defendant Stamps.Com, Inc. ("Defendant") submitted a Joint Stipulation, pursuant to Central District of California Local Rule 37. On July 19, 2005, each party submitted a Supplemental Memorandum, pursuant to L.R. 37-2.3. On August 2, 2005, the Court held a hearing on Plaintiff's Motion. After consideration of the Joint Stipulation, Supplemental Memoranda and oral argument, the Court DENIES the Motion.



## II. THE PARTIES' POSITIONS AND FACTUAL BACKGROUND

The underlying litigation involves allegations of misappropriation of trade secrets. Plaintiff contends that Defendant wrongfully breached a nondisclosure agreement and improperly used Plaintiff's confidential and proprietary technical information. (Plaintiff's Supp. Mem. at 2). The parties are currently engaged in the discovery phase of the litigation. The discovery cut-off date is December 7, 2005.

The parties have agreed that a protective order governing the exchange of confidential information is appropriate. (Jt. Stip. at 2). The sole issue in dispute is whether the in-house counsel of Defendant, Seth Weisberg, should be allowed access to information that Plaintiff designates as "highly confidential." Plaintiff contends that, because Mr. Weisberg is a "high level decisionmaker" within the corporation, he should not be allowed access to Plaintiff's highly confidential information. (Id.). Defendant disagrees, asserting that either the information is not deserving of the "highly confidential" designation or, if it is, there is no reason not to disclose such information to Mr. Weisberg.

## III. GOVERNING CASE LAW

The Ninth Circuit addressed the issue of confidentiality in discovery and the role of protective orders in Foltz v. State Farm Mutual Automobile Ins. Co., 331 F.3d 1122 (9th Cir. 2003). The Foltz court recognized the general rule that for a court to enter a protective order, the court must "identify and discuss the factors it considered

in its 'good cause' examination to allow appellate review of the exercise of its discretion." Foltz, 331 F.3d at 1130 (quoting Phillips v. Gen. Motors, 307 F.3d 1206, 1212 (9th Cir. 2002)). A party asserting good cause bears the burden of showing that specific prejudice or harm will result from the disclosure of each document (or item of information) that it seeks to protect. Id.

It is well-established that the "fruits of pre-trial discovery are, in the absence of a court order to the contrary, presumptively public. Rule 26(c) authorizes a district court to override this presumption where 'good cause' is shown." San Jose Mercury News, Inc. v. United States Dist. Ct., 187 F.3d 1096, 1103 (9th Cir. 1999)(internal citations omitted). Ninth Circuit precedent strongly favors disclosure to meet the needs of parties in pending litigation. Beckman Industries, Inc. v. International Ins. Co., 966 F.2d 470, 475 (9th Cir.), cert. denied, 506 U.S. 868, 113 S. Ct. 197, 121 L. Ed. 2d 140 (1992). Federal Rule of Civil Procedure 26(c)(7) provides for a protective order upon a showing "that a trade secret or other confidential research, development or commercial information not be revealed or be revealed only in a designated way."

The more narrow question of a general counsel's access to trade secrets and other highly confidential information has been addressed in a number of cases. In Brown Bag Software v. Symantec Corp., 960 F.2d 1465 (9th Cir.), cert. denied, 506 U.S. 869, 113 S. Ct. 198, 121 L. Ed. 2d 141 (1992), Brown Bag challenged a protective order issued by a magistrate judge which prevented Brown Bag's in-house counsel from directly reviewing confidential documents. Brown Bag's in-house counsel

1  could have access to the documents only through an "independent
2  consultant, legal or otherwise." Brown Bag, 960 F.2d at 1469. Brown
3  Bag argued on appeal that its in-house counsel should have been allowed
4  direct access to Symantec's trade secrets and that the denial of access
5  prevented Brown Bag from properly opposing Symantec's summary judgment
6  motion.

8  The Brown Bag court found that trial courts would need to apply a
9  "balancing test." Id. at 1470. The lower court must balance the risk
10 to the disclosing party of the inadvertent disclosure of trade secrets
11 to competitors against the risk to the requesting party that its ability
12 to prosecute its claims is impaired. Id. at 1471. The court found that
13 trial courts must examine factually "all the risks and safeguards
14 surrounding inadvertent disclosure by any counsel, whether in-house or
15 retained. Further, the nature of the claims and of a party's
16 opportunity to develop its case through alternative discovery procedures
17 factors into decisions on the propriety of such orders." Id. Finding
18 that the magistrate judge conducted a comprehensive evidentiary hearing
19 and properly balanced these competing interests, the Ninth Circuit
20 upheld the protective order limiting access to the in-house counsel.

22 In Amgen, Inc. v. Elanex Pharmaceuticals, Inc., 160 F.R.D. 134
23 (W.D. Wash. 1994), the court concluded that in-house counsel should be
24 allowed access to confidential information. After evaluating the nature
25 of the in-house counsel's position and determining that the in-house
26 counsel was not involved in "competitive decisionmaking" (unlike the in-
27 house counsel in Brown Bag), the court declined to enter the proposed
28 protective order limiting the in-house counsel's access. Cf. Intel

Corp. v. Via Technologies, Inc., 198 F.R.D. 525, 531-32 (N.D. Cal. 2000)(denying access to in-house counsel because the significant role in-house counsel held within company made the potential for inadvertant disclosure too great). With these authorities in mind, the Court now turns to evaluate Kara Technology's Motion.

**IV. PLAINTIFF HAS FAILED TO MEET ITS BURDEN OF DEMONSTRATING THE HARM THAT WOULD RESULT FROM THE DISCLOSURE OF THE IDENTIFIED INFORMATION TO SETH WEISBERG, IN-HOUSE COUNSEL FOR STAMPS.COM**

Mr. Weisberg submitted a declaration describing his duties with Stamps.com. (Declaration of Seth Weisberg ("Weisberg Dec."), attached to Jt. Stip.). He has held the position of Vice President and General Counsel since March 2001. (Weisberg Dec. ¶ 1). His duties include managing the Legal Department and personally handling all the various general legal issues involving Stamps.com. (Weisberg Dec. ¶ 2). Mr. Weisberg advises Stamps.com on corporate and securities matters, Sarbanes-Oxley compliance, corporate formalities, tax and accounting issues, general commercial litigation, labor and employment issues, regulatory and government affairs, commercial matters, intellectual property issues and international law. (Weisberg Dec. ¶ 3). His specific duties in connection with intellectual property matters include the supervision of preparation of patent applications, the receipt and review of patent opinions, advising Stamps.com on licensing agreement language and supervising outside counsel. (Weisberg Dec. ¶ 4). Mr. Weisberg has advised management regarding alleged or potential infringement of existing patents, but he does not make business decisions regarding design considerations. (Id.). He asserts that

intellectual property-related duties comprise a relatively small minority of his legal work for Stamps.com. (Id.). Mr. Weisberg does not make any decisions regarding pricing, marketing or sales. (Weisberg Dec. ¶ 5).

During the hearing, Plaintiff's counsel identified four categories of documents which Plaintiff seeks protection from disclosure to Mr. Weisberg. (Transcript ("TR") at 6). Each category will be addressed below.

**A. Marketing Documents**

Plaintiff's counsel described these documents as "letters, offers to view products, market research-type documents." (TR 6). He stated that the dates for these documents would range from 1999 to 2001. (Id.). These documents include letters from potential customers interested in the technology that Plaintiff was developing. (Id.). When the Court asked Plaintiff's counsel to identify the harm from disclosure of these documents to Mr. Weisberg, counsel asserted that it would give Mr. Weisberg an unfair advantage in negotiating with those same customers.

The Court reminded counsel that those letters were at least four years out of date. Counsel asserted that Plaintiff's strategy in negotiating would not have changed, even over a four-year period. (Id. at 9). The Court disagrees, however, finding that Plaintiff has not identified any particular harm that it would experience as a result of

1  Mr. Weisberg's review of 1999-2001 "marketing documents." The Motion
2  is therefore DENIED as to this category of documents.

### B. Licensing Offers

The second category of documents is "licensing offers." (Id. at 9). These are allegedly offers to license Plaintiff's products from other companies, again in the 1999-2001 time frame. (Id.). Plaintiff's counsel argued that this would expose Plaintiff's "customer base" to Defendant.

However, customer lists generally are subject to disclosure pursuant to an appropriate protective order. See Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc., 200 F.R.D. 255, 261 (M.D.N.C. 2001)(ordering disclosure of supplier lists subject to protective order); Geophysical Systems Corp. v. Raytheon Co., Inc., 117 F.R.D. 646, 649 (C.D. Cal. 1987)(ordering disclosure of defendant's customer lists, subject to protective order); Russ Stonier, Inc. v. Droz Wood Company, 52 F.R.D. 232, 234 (E.D. Pa. 1971)(ordering disclosure of defendant's manufacturers, dealers and distributors to plaintiff, subject to protective order). Here, there is no showing by Plaintiff that disclosure of this customer information to Mr. Weisberg would present any unique harm that would not be ordinarily presented by the disclosure of a customer list during litigation. As such, Plaintiff has not demonstrated a need to limit Mr. Weisberg's access to such information, and Plaintiff's Motion is DENIED as to this category of documents.

### C. Proposed Agreements and Negotiation Documents

Plaintiff's counsel repeated his previous arguments when describing the alleged harm that Plaintiff would suffer from the disclosure of proposed agreements and negotiation documents. (Id. at 10-11). These documents are also from the 1999-2001 time period. For the reasons stated in Section "A", above, the Court DENIES the Motion as it pertains to this category of documents.

### D. Source Code Documents

The final category of documents is described as "source code documents" which contain the source codes for various technologies developed by Plaintiff. (TR 6). More specifically, these documents reflect the "source code essentially for software that will help enable the type of internet-based stamps technology that is at issue in this case." (TR 7). Plaintiff's counsel described this information as "product design" information. (TR 7-8).

Defendant's counsel asserted that, as this case involves an industry where "technology moves very quickly," information pertaining to Plaintiff's product design from 1999 to 2001 is no longer valuable information. (TR 12). Thus, there would be no harm to Plaintiff from disclosure of this outdated information.

Defendant also contended that Mr. Weisberg's role in Stamps.com is not as a "competitive decisionmaker." (TR 18). Mr. Weisberg's declaration established that he is not involved in marketing, sales or

product design. (Weisberg Dec. ¶ 4). Mr. Weisberg does not prepare patent applications, but may supervise other lawyers who do prepare such applications. (TR 19; Weisberg Dec. ¶ 4). His declaration establishes that he is not involved in aspects of Stamps.com's business that would render him a "competitive decisionmaker" as defined by the court in Brown Bag and its progeny.

Defendant further distinguished Brown Bag on the grounds that the parties in that case were both very active competitors in the same marketplace. (TR 20). The Court agrees with this observation. Here, as is evidenced in the declaration of Plaintiff's CEO, Plaintiff is not actively in competition with Defendant at the present time.

Defendant assured the Court that adequate safeguards exist to prevent Mr. Weisberg from revealing this information to anyone else at Stamps.com. (TR 23). Defendant's counsel also stated that Defendant would undertake further reasonable safeguards, if necessary. (TR 23). Mr. Weisberg was previously subject to a protective order in a different lawsuit, and there is no evidence that he violated that previous protective order. (TR 24).

Based upon the above facts, the Court finds that Mr. Weisberg is not a competitive decisionmaker within Stamps.com. The nature of his duties, the fact that other individuals draft patent applications, and the fact that he has no involvement in product design or pricing support this conclusion. Equally important is Plaintiff's inability to demonstrate that it would suffer any particularized harm from the disclosure of this "source code" information to Mr. Weisberg. As

acknowledged by Plaintiff's counsel, the source code information is dated from 1999 to 2002. Thus, it is at least three years old. This Court agrees with the assertion by Defendant that technology for business conducted over the Internet is evolving at an extremely rapid rate. Without more specific information from Plaintiff about the type of harm that would result following disclosure to Mr. Weisberg, the Court must conclude that Plaintiff is not entitled to the extremely limiting protective order it seeks. Thus, the Motion is DENIED as to this category of documents as well.

## V. CONCLUSION

Here, after balancing the risk to Plaintiff of the inadvertent disclosure of each category of information to competitors against the risk to Defendant that its ability to prosecute its claims is impaired, the Court finds that the balance tips in favor of Defendant. The information does not appear to come within the definition of "trade secrets," or, even if it does, it appears unlikely that Mr. Weisberg will be in a position to make an inadvertant and harmful disclosure of the information. For the reasons stated above, Plaintiff's Motion for a Protective Order is DENIED.

DATED: August 22, 2005

SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY FAX DELIVERY ON PLAINTIFF/DEFENDANT (OR PARTIES) AT THEIR RESPECTIVE MOST RECENT FAX NUMBER OF RECORD IN THIS ACTION ON THIS DATE.

DATE: 8/22/05

DEPUTY CLERK

10