**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RED BEND, LTD., and<br>RED BEND SOFTWARE INC., | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 09-cv-11813-DPW |
| | § | |
| GOOGLE INC., | § | |
| | § | |
| Defendant. | § | |

**DECLARATION OF W. CHRISTOPHER BAKEWELL**

**March 1, 2010**

[FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER]

*Attorneys' Eyes Only*
*Confidential*

# Table of Contents

1. Introduction ...................................................................................................................... 1

2. Summary of Opinions ....................................................................................................... 2

3. Background ........................................................................................................................ 2

    *3.1 Overview of This Litigation* ...................................................................................... 2

    *3.2 Overview of Red Bend* ............................................................................................. 3

    *3.3 Overview of Google* ................................................................................................. 5

4. Financial Analysis ............................................................................................................. 6

    *There is No Foundation for Red Bend's Claims of Lost Market Share* ....................... 9

    *There Is No Evidence Red Bend Has Lost or is Likely to Lose Any Business Opportunities Due to Courgette* ............................................................................................................. 12

    *Red Bend's Statement Regarding "Undefined Loss of Goodwill" Has No Foundation* ......................... 14

    *Certain Other Inaccuracies in Red Bend's Positions* ............................................... 15

5. Conclusions ..................................................................................................................... 16

*Attorneys' Eyes Only*
*Confidential*

I, W. Christopher Bakewell, declare as follows:

## *I. INTRODUCTION*

1. I am a Managing Director of Duff & Phelps, LLC ("D&P"), an international consulting firm founded in 1932 specializing in financial advisory services and valuation issues. My primary responsibility at D&P is to provide consulting services involving valuation and financial areas. My practice concentrates on issues involving technology-rich businesses and intellectual property.

2. I earned a B.S. degree *magna cum laude* from Bradley University in Peoria, Illinois. I also earned a MBA degree from the University of Maryland at College Park, where I was a Graduate Fellow. I am a Certified Licensing Professional, a designation of the Licensing Executives Society intended to distinguish those who have demonstrated experience, proficiency, knowledge, and exposure to licensing and commercialization of intellectual property. I also am an Accredited Senior Appraiser in Business Valuation, a designation of the American Society of Appraisers. Among other things, this designation requires 10,000 hours of documented experience in valuing assets and businesses; I acquired most of this experience through the valuation of intellectual property rights and technology-rich business enterprises. A copy of my *curriculum vitae*, including my current and past employment and professional affiliations, is included as Attachment A. A complete list of my trial and deposition testimony is included as Attachment B.

3. I have been retained by Bingham McCutchen LLP, counsel for Google Inc. ("Google"), to analyze, from a financial and commercial perspective, Red Bend's[1] claim that it will suffer irreparable harm in the absence of preliminary injunctive relief from Google's alleged infringement of Red Bend's United States Patent No. 6,546,552 ("the '552 patent"). For

---

[1] Plaintiffs Red Bend Ltd. and Red Bend Software Inc. are referred to collectively herein as "Red Bend."

*Attorneys' Eyes Only*
*Confidential*

purposes of this analysis, I have assumed that the '552 patent is valid, enforceable, and infringed by Google's "Courgette" software.

4. I have reviewed the information listed in Attachment C or referenced elsewhere in this declaration. My review and analysis of this information, together with my background, training, education and experience, form the bases for the conclusions stated in this declaration.

## 2. SUMMARY OF OPINIONS

5. From a commercial perspective, even if Google's Courgette were determined to infringe the '552 patent, I have seen no indication that said infringement could not be remedied by an award of monetary damages, for example in the form of a reasonable royalty.

6. I disagree with Mr. Salinger's positions regarding the financial and economic impact to Red Bend from Google's Courgette as it relates to this lawsuit. I have seen no evidence supporting Red Bend's claim of irreparable harm, and specifically its claims regarding likely losses in market share revenues, opportunities and goodwill. Many of the positions Red Bend has taken are inconsistent with my research and information that I have reviewed. In particular, I disagree with Red Bend's assertions that it will suffer an "unquantifiable" loss of market share, that it will lose revenue and market opportunities, and that it will suffer an "unrecoverable" loss of goodwill. Not only are these claims not supported by any evidence Red Bend has presented, they contradict to the evidence available even at this early stage of the case.

## 3. BACKGROUND

### 3.1 Overview of This Litigation

7. On November 17, 2009, Red Bend filed a Motion for a Preliminary Injunction Enjoining Google's Infringement, and a supporting Memorandum (the "PI Memo"). I understand that the PI Memo describes Red Bend's rationale for a preliminary injunction that (i) would prohibit

2

Google from implementing Google Courgette updates; (ii) prohibit Google from publicly posting the Courgette source code and accompanying instructions on the Internet; and (iii) require Google to "publish an announcement that its previously published Courgette code is not 'open' and free for all to use, but is alleged to be protected by the '552 patent."[2] The PI Memo is supported by the declaration of Red Bend's Chief Executive Officer, Yoram Salinger, filed on November 17, 2009 ("the November 17th Salinger Declaration").[3] Mr. Salinger filed a second declaration in this action on November 25, 2009 ("the November 25th Salinger Declaration").[4]

*3.2 Overview of Red Bend*

8. Red Bend describes itself as a privately held company founded in 1999, now with offices in China, Israel, Japan, Korea, the United Kingdom and the United States.[5] Red Bend provides software solutions for managing firmware, applications and devices over-the-air.[6] Red Bend states that its software has been deployed in millions of mobile devices by eight of the top ten handset manufacturers, including Kyocera, LG Electronics, Motorola, Samsung, Sharp, Sony Ericsson and ZTE, as well as other leading companies in the mobile phone, machine-to-machine ("M2M") and WiMAX businesses.[7]

9. Red Bend's firmware over-the-air ("FOTA") technology has been embedded in 620 million mobile devices spanning over 455 device models.[8] According to VisionMobile, as of December 2009, Red Bend's share of FOTA shipments was approximately 64 percent.[9]

---

[2] Memorandum in Support of Plaintiff's Motion for a Preliminary Injunction Enjoining Google's Infringement at 20.
[3] Declaration of Yoram Salinger in Support of Plaintiffs' Motion for a Preliminary Injunction Enjoining Google's Infringement, November 17, 2009 [dkt. 9, attachment 3].
[4] Declaration of Yoram Salinger in Opposition to Google's Emergency Motion for Modification of the Preliminary Injunction Briefing Schedule, November 25, 2009 [dkt. 19, attachment 1].
[5] GOOG-00037056.
[6] GOOG-00037056.
[7] GOOG-00037056.
[8] "VisionMobile Names Red Bend In Top 5 Percent of Mobile Software Shipments," December 15, 2009, http://www.redbend.com/news/view_article.asp?ID=883&TypeID=1.
[9] "VisionMobile Names Red Bend In Top 5 Percent of Mobile Software Shipments," December 15, 2009, http://www.redbend.com/news/view_article.asp?ID=883&TypeID=1.

*Attorneys' Eyes Only*
*Confidential*

10.

11. Red Bend is focused on over-the-air updating.[13]

                                       [14] Mr. Salinger testified that

         "[15]

12. Until recently, Red Bend offered three software products: vCurrent Mobile, for updating software components over-the-air ("SCOTA"); vRapid Mobile, a FOTA application; and vDirect Mobile, for over-the-air device management.

                                   [17] Mr. Salinger testified that

                                          Mr. Salinger also

testified that

---

[10] Deposition of Yoram Salinger, February 17, 2010, p. 247-51; RedBend0005877-79.
[11] Deposition of Yoram Salinger, February 17, 2010, p. 252.
[12] Deposition of Yoram Salinger, February 17, 2010, p. 189-191.
[13] Capital IQ, Red Bend Software, Inc., Private Company Profile.
[14] RedBend0009674-700 at 686. Mr. Salinger testified that '

[15] Deposition of Yoram Salinger, February 17, 2010, p. 95.
[16] Deposition of Yoram Salinger, February 17, 2010, p. 47; GRB00001775.
[17] Deposition of Yoram Salinger, February 17, 2010, p. 47-48; GRB00001799.
[18] Deposition of Yoram Salinger, February 17, 2010, p. 41.
[19] Deposition of Yoram Salinger, February 17, 2010, p. 105-107.

4

*Attorneys' Eyes Only*
*Confidential*

13. Google is a global technology firm incorporated in California during September 1998.[20] Google owns and operates a leading Internet search engine, google.com.[21] Google maintains a massive index of web sites and other online content that is freely and instantly available through its search engine to anyone with an Internet connection.[22] Google provides consumers and businesses with Internet-based search technologies, advertising services and web-based applications.[23] Google's consumer services and products include Internet and desktop search, communication tools, software applications, content aggregations, mobile search and short message search services.[24]

14. Google Chrome is an open-source web browser offered by Google that combines a minimal design (a Google hallmark) with technologies to make the web faster, safer and easier to navigate.[25] Google released the Chrome web browser in September 2008.[26] In July 2009, Google began using a new compression algorithm called Courgette to make Chrome web browser software updates smaller.[27] It also published the Courgette code as open source code subject to a BSD license.[28] Google does not charge for the Google Chrome web browser or Courgette.[29]

---

[20] Google, Inc. Form 10-K for the period ending December 31, 2008, p. 1.

[21] Google, Inc. Company Profile, *Datamonitor*, January 2007, p. 129.

[22] Google, Inc. Form 10-K for the period ending December 31, 2008, p. 1.

[23] Google, Inc. *Edwards & Sons, Inc* , March 28, 2007, p. 2.

[24] Google, Inc. *Edwards & Sons, Inc* , March 28, 2007, p. 2; Google, Inc. Form 10-K for the period ending December 31, 2008, p. 2-6.

[25] Google, Inc. Form 10-K for the period ending December 31, 2008, p. 5.

[26] http://www.cbc.ca/technology/story/2008/09/01/google-browser.html.

[27] GOOG-00026259; GOOG-00036991.

[28] GOOG-00027268. I understand BSD licenses to be a family of permissive free software licenses. The phrase BSD originates from the Berkeley Software Distribution, a Unix-like operating system.

[29] http://www.google.com/chrome; GOOG-00026266.

*Attorneys' Eyes Only*
*Confidential*

## 4. FINANCIAL ANALYSIS

### 4.1 Financial Perspective on Monetary Damages and Adequate Compensation

15. Red Bend asserts that its patent rights have somehow been "devalued" due to Google's alleged infringement.[30] Red Bend's assertion implies that damages can be quantified because damages can be conceptually regarded as measuring a reduction in value to a plaintiff.[31] However, Red Bend also argues that a preliminary injunction is appropriate. I understand that, as a matter of law, the availability of monetary damages precludes a finding of irreparable injury, and thus precludes issuance of a preliminary injunction.

16. In a patent infringement matter, economic damages are determined pursuant to 35 U.S.C. § 284, which requires that:

> Upon finding for the claimant, the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.[32]

17. The well-known *Georgia-Pacific* case set forth 15 factors for determining a reasonable royalty that are routinely used to quantify damages in patent infringement cases (the "G-P Factors").[33] A summary of the G-P Factors, together with information and considerations that I have reviewed to date in this matter relating to each factor, is provided in Exhibit 3.[34] While this dispute is at an early stage, my preliminary review of the G-P Factors indicates that information probative to a reasonable royalty exists for each G-P Factor. To the extent that further

---

[30] Memorandum in Support of Plaintiff's Motion for a Preliminary Injunction Enjoining Google's Infringement, p. 18.
[31] Par, Russell L. *Intellectual Property Infringement Damages*, p. 107.
[32] 35 U.S.C. § 284.
[33] *Georgia-Pacific Corp v U S. Plywood Corp*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *modified and affirmed*, 446 F. 2d 295 (2d Cir. 1971), *cert denied*, 404 US 870 (1971). The G-P Factors are comprehensive, but are unprioritized and frequently overlapping.
[34] The exhibit contains preliminary observations regarding factors influencing a hypothetical licensing negotiation between Red Bend and Google. It is not a reasonable royalty determination. I reserve the right to update and expand upon this information in light of further discovery and receipt of new information.

6

information is required to quantify reasonable royalty damages, it is apparent that such information could be obtained via the discovery process.

18. Accordingly, based upon the evidence that I have seen to date, there is no reason why Red Bend could not be compensated by damages, for example in the form of a reasonable royalty (to the extent that any damages are appropriate at all).

19. Mr. Salinger testified that

20. The Salinger Declarations did not address

21. Red Bend appears to accuse Google of both direct and indirect infringement. I understand Red Bend has offered no evidence in support of the preliminary injunction motion that any third party has directly infringed the '552 patent, and particularly no evidence of a competing third-party product that embodies the claims of the '552 patent. I understand that indirect infringement may generally be described as infringement that flows from inducement of infringement and contributory infringement, as described under 35 U.S.C. § 271(b) and 35

[35] Deposition of Yoram Salinger, February 17, 2010, p. 226.
[36] Deposition of Yoram Salinger, February 17, 2010, p. 224.
[37] Deposition of Yoram Salinger, February 17, 2010, p. 224

*Attorneys' Eyes Only*
*Confidential*

U.S.C. § 271(c), respectively. I further understand it is the plaintiff's burden to prove and measure indirect infringement. This may be accomplished via surveys, market studies, expert research and through the discovery process. I have seen no evidence indicating that an analyses of damages, if any, attributable to indirect infringement could not be performed.

22. Patents and patent rights are frequently valued outside of a litigation context, including for financial reporting purposes.[38] To date, I have seen no evidence indicating that the patent rights at issue in this dispute could not be valued.

*4.2 Red Bend's Statements Regarding Irreparable Harm*

23. On September 3, 2009, Mr. Salinger wrote to Sundar Picahi, Google Vice President of Product Management. In the September 2009 letter, Mr. Salinger stated that Google's posting of "a differential compression algorithm for making Google Chrome updates significantly smaller, if implemented, would infringe [the '552 patent] and cause ... Red Bend irreparable harm."[39] When Mr. Salinger was asked about the September 2009 letter at deposition in February 2010,

24. In its PI Memo, Red Bend claimed that Google's alleged infringement will cause Red Bend to experience: (i) an "unquantifiable loss of market share; (ii) a "loss of revenue and market opportunities," and (iii) an undefined "unrecoverable loss of goodwill."[41] Red Bend provided no empirical evidence or analysis to support its position (apparently, Red Bend provided no evidentiary citation at all other than the November 17, 2009 Salinger Declaration). According to my research, each of Red Bend's three positions in this regard are unsupportable and/or factually inaccurate. A discussion follows.

---

[38] When one company acquires another, patents and other intangible assets must be valued (Statement of Financial Accounting Standards 141, p. 5, 47). These valuations must be tested annually for impairment (Statement of Financial Accounting Standards 141, p. 5, 47). Patents are also valued in the ordinary course of business connection with business transactions (licenses and purchase/sale), as well as for other purposes such as transfer pricing between two affiliated companies (Internal Revenue Code §482).
[39] RedBend0007896-913 at 896.
[40] Deposition of Yoram Salinger, February 17, 2010, p. 169-170.
[41] Memorandum in Support of Plaintiff's Motion for a Preliminary Injunction Enjoining Google's Infringement, p. 17-18; Memorandum in Support of Plaintiff's Motion for a Preliminary Injunction Enjoining Google's Infringement, p. 2.

*Attorneys' Eyes Only*
*Confidential*

_There is No Foundation for Red Bend's Claims of Lost Market Share_

25. I understand that in a matter involving a preliminary injunction, lost market share must be proven (or at least substantiated with some evidence) to support entry of a preliminary injunction. I further understand that this is because granting preliminary injunctions on the basis of speculative loss of market share would result in the issuance of preliminary injunctions "in every patent case where the patentee practices the invention."[42]

26. There is no indication that Google's Courgette product competes with Red Bend's products.[43] Neither Google nor Red Bend lists the other as a competitor in documents that it holds out to the public.[44]

27.

Courgette is an application that creates updates for software that runs on personal computers running Microsoft Windows (_i.e._, not mobile phones).[48] This is another consideration that runs against the grain of Red Bend's position that it competes with Google in any way relevant to this case.

---

[42] _Automated Merchandising Systems, Inc v Crane Co_ 2009 WL 4878643 (Fed. Cir. Dec. 16, 2009); _Nutrition 21 v United States_, 930 F.2d 867, 871 (Fed. Cir. 1991).
[43] Red Bend describes itself as "the leader in Mobile Software Management" and its software as being "designed for mobile phone, mobile broadband PC cards and modems, WiMAX mobile devices, machine-to-machine ("M2M") modules and other wireless equipment." (see http://www.redbend.com/pdf/CorporateProfile.pdf).
[44] Google Inc. Form 10-K for the period ending December 31, 2008, p. 14;
http://www.redbend.com/pdf/CorporateProfile.pdf; Red Bend Software, Inc., _Datamonitor_, April 13, 2009, p. 7; Support for Device Management in Mobile Handsets: 2008-2010 (3Q08 update), _Ovum_, March 11, 2009; Galbraith, Mike, _Wireless Asia_, "Late-comer takes center stage in FOTA," Oct/Nov 2007. _See also_ RedBend0008343 (identifying Bitfone and InnoPath as Red Bend's primary competitors).
[45] For example, see RedBend0002632; RedBend0002618; RedBend0002499.
[46] RedBend0009830; RedBend0009694-0700 at 686; Deposition of Yoram Salinger, February 17, 2010, p. 105-106.
[47] RedBend0009830; Deposition of Yoram Salinger, February 17, 2010, p. 111-112.
[48] GOOG-00026259.

_Attorneys' Eyes Only_
_Confidential_

28. Mr. Salinger testified tha

In contrast, Google's Courgette is used as part
of the process of creating updates for the Google Chrome web browser that runs on Microsoft
Windows.[52]

29. Even though the differences between Google and Red Bend are pronounced, in his November
25, 2009 declaration, Mr. Salinger stated that "Red Bend and Google are competitors."[53] Mr.
Salinger testified that

However, this purported competition is unrelated to Courgette.
Google is a supporter of the "Android" open source operating system for mobile phones. With
respect to Google-managed phones running on the Android platform, Google does not use
Courgette. Rather, Google uses an open source differential compression algorithm called
"BSDiff" to create updates for these phones.[55] Red Bend has never accused BSDiff of
infringing the '552 patent.[56] Accordingly, it is clear that the products at issue in this case do not
compete.

30. Moreover, Mr. Salinger testified that

[49] Deposition of Yoram Salinger, February 17, 2010, p. 53.

(deposition of Yoram Salinger, February 17, 2010, pp. 29, 48-51).
(deposition of Yoram Salinger,
February 17, 2010, pp. 51-52).                                                  , (deposition of Yoram
Salinger, February 17, 2010, p. 52).
[50] RedBend0009830; RedBend0009694-9700 at 686; Deposition of Yoram Salinger, February 17, 2010, p. 105-106.
[51] Deposition of Yoram Salinger, February 17, 2010, p. 54, p. 146 (
                                         . See also deposition of Yoram Salinger, February 17, 2010, pp. 194-
196, where Mr. Salinger testified that

[52] GOOG-00026259.
[53] Declaration of Yoram Salinger in Opposition to Google's Emergency Motion for Modification of the Preliminary
Injunction Briefing Schedule, November 25, 2009, p. 1.
[54] Deposition of Yoram Salinger, February 17, 2010, p. 68.
[55] RedBend0009069; GOOG-00039449. Deposition of Yoram Salinger, February 17, 2010, p. 86-87.
[56] Deposition of Yoram Salinger, February 17, 2010, p. 83-84.
[57] Deposition of Yoram Salinger, February 17, 2010, p. 84.

Attorneys' Eyes Only
Confidential

Mr. Salinger nevertheless testified that he

,[59] Mr. Salinger also testified that he did
not have any reason to doubt that Google is in fact using BSDiff.[60] Accordingly, Mr. Salinger's
position regarding any purported competition between Courgette and Red Bend's products lacks
foundation.

31. I have reviewed additional evidence confirming that the relationship between Red Bend and
    Google is complementary.

Mr. Salinger testified that

Mr. Salinger further testified that

Since Android is not accused of
infringing, this is another opportunity for Red Bend to commercialize the claims of the '552
patent.

32. Remarkably, Mr. Salinger testified that

---

[58] RedBend0009056-84 at 69.
[59] Deposition of Yoram Salinger, February 17, 2010, p. 69, 71 and 83-87.
[60] Deposition of Yoram Salinger, February 17, 2010, p. 86-87.
[61] RedBend 0009056-84.
[62] RedBend 0009056-84 at 59. See also deposition of Yoram Salinger, February 17, 2010, p. 81-82. .

[63] Deposition of Yoram Salinger, February 17, 2010, p. 82. *See also* RedBend0009693, which Mr. Salinger testified
                                                                                     Deposition of Yoram Salinger,
February 17, 2010, p. 109-110.
[64] Deposition of Yoram Salinger, February 17, 2010, p. 82-83.
[65] Deposition of Yoram Salinger, February 17, 2010, p. 163.

11

*Attorneys' Eyes Only*
*Confidential*

33. In summary, while Mr. Salinger has taken the position that Red Bend and Google are competitors, he is referring to competition only in a limited sense as providing software updating for certain Google-managed phones running on the Android platform. However, Mr. Salinger and Red Bend have provided no evidence to support even this restricted position regarding competition. Furthermore, Mr. Salinger has not considered (or set aside) the fact that the product Red Bend has accused of infringing, Courgette, does not compete with Red Bend's products. The evidence shows that the products at issue in this case do not compete with one another.

### *There Is No Evidence Red Bend Has Lost or is Likely to Lose Any Business Opportunities Due to Courgette*

34. Red Bend has stated that its licensees "will *likely*...cease payment of royalties" (emphasis added) to Red Bend since Google released Courgette.[66] However, Red Bend has not identified a single, specific customer who has ceased paying fees, or intends to cease to pay. In the evidence I have reviewed, I have seen no evidence supporting Red Bend's claim that licenses are likely to cease payment of royalties. This is consistent with the testimony of Mr. Salinger, who stated

35. Mr. Salinger testified that

---

[66] Declaration of Yoram Salinger in Support of Plaintiffs' Motion for a Preliminary Injunction Enjoining Google's Infringement, November 17, 2009, pg. 4.
[67] Deposition of Yoram Salinger, February 17, 2010, p. 205-206.
[68] Deposition of Yoram Salinger, February 17, 2010, p. 207.
[69] Deposition of Yoram Salinger, February 17, 2010, p. 207.

*Attorneys' Eyes Only*
*Confidential*

36.

37.

38. Mr. Salinger also testified that

39. Mr. Salinger also testified that

---

[70] Deposition of Yoram Salinger, February 17, 2010, p. 166.
[71] Deposition of Yoram Salinger, February 17, 2010, p. 166.
[72] RedBend0010287-89 at 88.
[73] Deposition of Yoram Salinger, February 17, 2010, p. 166.
[74] Deposition of Yoram Salinger, February 17, 2010, p. 234.
[75] Deposition of Yoram Salinger, February 17, 2010, p. 160 (emphasis added).

*Attorneys' Eyes Only*
*Confidential*

Again, neither BSDiff nor any aspect of Android is accused by Red Bend of infringing the '552 patent.[77]

40. In order to identify whether any Red Bend customers would be lost due to the allegedly wrongful use of Courgette, it would be necessary to isolate the analysis to the issue at hand. In other words, because there are other differential compression algorithms available, third-party products could have caused the loss of any one customer to Red Bend. Red Bend has performed no such analysis. To this end, Mr. Salinger testified that




41. In summary, I have seen no evidence supporting Red Bend's claim that it is likely to lose customers or revenues as a result of Google's alleged infringement. This lack of evidence is consistent with the fact that Courgette does not compete with any Red Bend product. Again, Courgette is used to create updates that are delivered over the Internet to the Chrome web browser running on Windows; Courgette is not used to create over-the-air updates for applications running on other platforms (such as the mobile phone platform that is Red Bend's primary business focus).

### *Red Bend's Statement Regarding "Undefined Loss of Goodwill" Has No Foundation*

42. As the preceding analysis demonstrates, Red Bend has not lost market share or business opportunities due to Courgette. Moreover, I have observed that Red Bend has pointed to no evidence supporting its alleged loss of goodwill. It follows that Red Bend has not established any loss of "goodwill."

---

[76] Deposition of Yoram Salinger, February 17, 2010, p. 232.
[77] First Amended Complaint at p. 3-4; Memorandum in Support of Plaintiff's Injunction Enjoining Google's Infringement, p. 9-13. *See also* deposition of Yoram Salinger, February 17, 2010, p. 83-84.
[78] Deposition of Yoram Salinger, February 17, 2010, p. 209-210.

*Attorneys' Eyes Only*
*Confidential*

43. Apparently, Red Bend has not fully considered what it means by alleging that it has lost goodwill. To this end, Red Bend never defined what it means by goodwill, which is a term that can have several definitions.[79]

*Certain Other Inaccuracies in Red Bend's Positions*

44. From a commercial point of view, Red Bend's positions appear to conflate the protection afforded by a patent with that of a trade secret. The alleged invention of the '552 patent was disclosed to the public when the '552 patent issued on April 8, 2003.[80] Therefore, the published claims of the '552 patented technology cannot be considered to be a trade secret. Software developers could use the techniques disclosed in the '552 patent with a license from Red Bend. Furthermore, Google has published its *own* source code for Courgette, not Red Bend's. Contrary to Red Bend's position in the PI Memo,[81] Google's source code cannot be broadly equated with the claims of the '552 patent.

45. Red Bend also appears to have overstated the importance of the '552 patent to its business. Despite Red Bend's claim that the '552 patent is the "core ... of its business,"[82]

Moreover, Red Bend's CEO, Mr. Salinger, stated that Red Bend generates revenues from its "proprietary implementation" of its patented techniques through software licensing and maintenance of that software.[85] Mr. Salinger also testified in his deposition that

---

[79] *See* Pratt, Shannon, Robert F., Reilly, Robert, and Schweihs, Robert. *Valuing a Business.* p. 913. McGraw-Hill (2000); http://dictionary.law.com/Default.aspx?selected=823; Robert F. Reilly, Robert, and Schweihs, Robert. *Valuing Intangible Assets.* p. 382-384. McGraw-Hill; Statement of Financial Accounting Standards No. 141, p. 2.
[80] United States Patent No. 6,546,552.
[81] Memorandum in Support of Plaintiff's Motion for a Preliminary Injunction Enjoining Google's Infringement, p. 2.
[82] Memorandum in Support of Plaintiff's Motion for a Preliminary Injunction Enjoining Google's Infringement, p. 19.
[83] *See, e.g.,* RedBend0003011-0003031; RedBend0005450-0005456; RedBend0005589-0005598.
[84] RedBend0000609.
[85] Declaration of Yoram Salinger in Support of Plaintiff's Motion for a Preliminary Injunction Enjoining Google's Infringement, November 17, 2009, p. 6. However, Red Bend does not argue that such a connection exists.

*Attorneys' Eyes Only*
*Confidential*

## 5. CONCLUSIONS

46. For the reasons set forth above, even if Google's Courgette were determined to infringe the '552 patent, I have seen no indication from a commercial perspective that said infringement could not be remedied by an award of monetary damages, for example in the form of a reasonable royalty.

47. I, W. Christopher Bakewell, declare under penalty of perjury that the foregoing is true and correct. Executed in Houston, Texas on March 1, 2010.

W. Christopher Bakewell

---

[86] Deposition of Yoram Salinger, February 17, 2010, p. 41.

*Attorneys' Eyes Only*
*Confidential*

*W. Christopher Bakewell, ASA, CLP*
*Managing Director*
*Duff & Phelps, LLC*

# DUFF&PHELPS

# PROFESSIONAL CREDENTIALS

*Chris Bakewell is a Managing Director located in Houston. Chris' client assignments have included the valuation and strategic management of businesses and intellectual property ("IP") rights, the valuation of companies and intangible assets in connection with business transactions, transaction-related advice and due diligence, as well as audits and investigations.*

*Chris' experience also includes providing consulting services in connection with business disputes. Chris has deep experience in matters involving patent infringement, breach of contract, theft of trade secrets, diminution of business value, trademark and copyright infringement, as well as other matters. He has testified in litigation and arbitration settings.*

| | |
|---|---|
| **Education** | MBA—Concentration: Finance, Graduate Fellow, Robert H. Smith School of Business, University of Maryland at College Park. Internship: US Securities & Exchange Commission.<br><br>B.S. *magna cum laude*—Business Management & Administration, Bradley University, Peoria, Illinois. |
| **Professional Affiliations and Certifications** | American Society of Appraisers (Accredited Senior Appraiser, Business Valuation)<br>Licensing Executives Society (Certified Licensing Professional)<br>Association for Corporate Growth, Member |
| **Speeches, Presentations and Publications** | "The Cost of Capital in Intellectual Property Damages," Forthcoming Chapter in *Cost of Capital: Applications and Examples* (co-author)<br><br>"Valuation of Patented Intellectual Property Rights," *The Value Examiner: Professional Development Journal of the National Association of Certified Valuation Analysts*, May/June 2009 (co-author)<br><br>"Negotiation of Patent License Agreements," *Kroll Global Fraud Report*, January 2008<br><br>"SFAS 157: An Overview of Fair Value and Valuation Standards for Intangibles," *Business Valuation Review: The Quarterly Journal of the Business Valuation Committee of the American Society of Appraisers*, Volume 26 No. 4, Winter 2007 (co-author)<br><br>"An Overview of Patent Reform and Recent Cases: Promoting Innovation?" Continuing Education Program for Attorneys, *Houston Bar Association, Corporate Counsel Section*, December 13, 2007 (co-panelist)<br><br>"Selecting an Expert and Getting the Most From Your Relationship," Continuing Education Program for Attorneys, *Association of Corporate Counsel*, October 18, 2007 (co-presenter)<br><br>"SFAS 157: Step Forward for the Valuation Community," *les Nouvelles*, July 2007 (co-author)<br><br>Journal Referee (editorial review board), *World Patent Information--The International Journal for Industrial Property Documentation, Information, Classification and Statistics*, an Elsevier |

*Journal*, Spring 2007

"Working with Your Damages Expert Throughout the Litigation Life Cycle," *Houston Bar Association*, March 22, 2007

Lectured and/or participated in classroom lectures at Baylor University (BEST Honors Business Program), University of Maryland at College Park (Smith School of Business) and the University of Houston (Blakely Advocacy Institute).

Planning committee, *2005 Advanced Patent Law Institute*, Austin, TX

Article regarding innovation in the oil sector, *Oil and Gas Financial Journal*, June 2005

Program advisory committee, *Electric Power 2005*, Chicago, IL

"Economics of Power Applications," *Electric Power 2003*, Houston, TX, March 2003 (co-chair)

"Comparison of US and European Energy Markets," *PowerGen Europe*, Milan, Italy, June 2002

| | |
|---|---|
| ***Examples of Business Experience*** | **Valuation and Finance** |

In the course of providing financial and valuation analyses, have focused on issues related to discounted cash flow, evaluation of market and competitive dynamics, determination of capital structure, transaction and market multiples, control premiums/minority discounts, discounts for lack of liquidity, and other transferability considerations.

Examples of client assignments and experience include:

- *Royalty Rate Analyses and Studies.* Completed numerous in-depth royalty rate and licensing analyses to assist clients in the development of licensing programs, evaluation of terms in licensing and contract negotiations, determination of fair market value for asset transfers, as well as determination of investment value. Reviewed and analyzed the terms and conditions of thousands of license agreements, as well as numerous other contracts. Evaluated royalty rates and other terms between multinational enterprises for tax and transfer pricing purposes.

- *Valuations and Other Opinion-related Services.* Prepared fairness opinions; for example, in connection with a financial transaction involving medical device companies. Performed solvency analyses. Performed valuations of various businesses including minority and control blocks of closely-held businesses and marketability discounts. These valuations of businesses and assets include manufacturing, distribution, retail and services sectors. In addition, performed purchase price allocations for financial reporting purposes (*i.e.,* SFAS 141 and SFAS 142). Performed valuations of IP assets, including patents, trademarks, copyrights and trade secrets.

- *Market Assessments.* Assisted clients in determination of new markets to be developed via licensing, evaluation of potential counterparties and structuring/negotiation of licensing arrangements, and ongoing business analysis. Assisted with the determination of the optimal structure for licensing of technology. Work has involved determination of

licensing counterparties, structuring of the potential licensing arrangements, evaluation of royalty rates, evaluation of market opportunities, assessment of the economic implications of technical alternatives (*e.g.,* design-arounds, design-outs, and non-infringing alternatives), identification and analysis of potential markets and market segments (including the analysis of injunctive relief), ongoing analysis of "IP rich" investments, as well as IP analytics.

- *Investigations, Royalty Audits and Audits of Contractual Rights.* Conducted royalty audits and other investigations related to contract compliance, including due diligence related to business transactions and fraud.

- *Business Leadership and Contract Negotiation Assistance.* Served as business unit financial leader for enterprises engaged in asset ownership, manufacturing, power generation, and construction. Structured, negotiated and evaluated investment opportunities including a natural gas storage facility, oil rigs and power generation projects throughout the world. Particular experience in Central America, the Caribbean basin, and South America. Participated in the negotiation of licenses, joint venture agreements, partnership agreements, buy-sell arrangements, and other contracts.

*Examples of Business*
*Experience*
*(continued)*

## Damages Analysis and Other Matters Related to Business Disputes

Broad range of experience in business disputes in a variety of litigation settings, including state court, federal court, bankruptcy court, arbitration and mediation. Performed services, analyses and other activities in connection with dispute-related negotiations, both pre- and post-litigation. Retained as an expert in a number of intellectual property matters. As an expert, performed analyses of reasonable royalties, lost profits and other opinions regarding damages.

Determined and testified regarding economic damages in connection with alleged patent, trademark, and copyright infringement as well as regarding other forms of intellectual property (*e.g.,* trade secrets and know-how) and contractual rights. Assignments have been in a wide range of industries, including: semiconductors, sports media, automotive, software, medical devices, pharmaceuticals, and oilfield services. Determined economic damages related to theft of trade secrets and proprietary information, diminution of business value, and diminution of business value related to alleged wrongful acts.

Specific experience in developing expert opinions regarding financial damages includes the following:

Computers and Technology

o  *Search and Online Advertising* Determined reasonable royalty damages regarding a damages claim for a method of determining bids for advertising in search engines.

o  *Semiconductors.* Provided consulting advice regarding licensing and damages associated with breach of a cross-license between two competitors.

o  *Ecommerce Software.* Provided rebuttal testimony regarding claim for damages on methods used for conducting online sales of goods.

o  *Data Compression.* Determined reasonable royalty damages in a matter involving data compression hardware and software. Provided rebuttal testimony on damages and licensing issues.

o  *ERP Software.* Determined and testified regarding reasonable royalty damages in a matter involving patented technology related to hierarchical accesses used for pricing.

o  *Telecommunications.* Determined the value of a block of shares of a telecommunications services company a controlling, non-marketable basis.

o  *Plasma Display Technology.* Analyzed and provided testimony regarding financial records, royalty base and issues related to reasonable royalty damages claim in connection with alleged patent infringement.

o  *Video* Analyzed economic damages for claims of patent infringement in matters involving parental control (*i.e ,* "V-Chip") technology.

o  *Product Configuration Software.* Determined economic damages in connection with claims of patent infringement, theft of trade secrets and breach of contract in a matter involving product configuration software.

**Examples of Business Experience (continued)**

o  *CRM Software (Banking).*   Determined economic damages in connection with allegations that a license had been breached.

o  *Authentication and Encryption.*   Analyzed economic damages in connection with claims of patent infringement.

o  *Statistical Software.*   Determined damages and provided expert testimony in connection with Lanham Act claims of trademark infringement.

o  *Telecommunications Software.*   Analyzed economic damages relating to claims of patent infringement in a matter involving routing of cellular calls based on geographic location.

o  *Semiconductors.*   Analyzed economic damages and exhaustion issues in connection with patent infringement claims involving DRAM technology.

o  *Software.*   Analyzed economic damages in relation to claims of patent infringement involving methods of programming used for video used over the Internet and related development tools.

o  *Software.*   Determined patent infringement damages in connection with alleged infringement of method claims for retail security related technology.

o  *Semiconductors/LEDs.*   Determined reasonable royalty damages relating to light emitting diodes.

o  *Semiconductors/LEDs.*   Analyzed reasonable royalty damages relating to light emitting diodes.

o  *Semiconductor Equipment*   Determined and testified regarding economic damages, including lost profits, reasonable royalty and head-start measures, in connection with a complex breach of contract, fraud and theft claim.

o  *Patented Security Software.*   Determined reasonable royalty and lost profits damages in litigation related to patented methods for security and performance software.

o  *Telecommunications/Mobile Devices.*   Determined reasonable royalty damages in a patent infringement matter involving mobile multimedia devices.

o  *Microprocessors.*   Provided consulting guidance to counsel and chip manufacturer regarding determination of reasonable royalty damages.

o  *Semiconductors.*   Determined economic damages in connection with alleged wrongful taking of memory-related semiconductor technology.

o  *Microprocessor Instruction Patents.*   Provided consulting guidance to counsel, chip manufacturer and computer retailer regarding determination of reasonable royalty damages and preparation of expert reports.

o  *Computer Algorithms for Database Tools.*   Provided financial and trial-related consulting support in matter involving patented methods for processing data.

**Examples of Business**
**Experience**
**(continued)**

o  *Multimedia Broadcasting.*  Performed reasonable royalty analysis concerning patented method for presenting game data and statistics over the Internet.

o  *Telecommunications.*  Provided financial and economic analysis in a dispute involving alleged patent infringement of patents covering methods of wireless telephone call routing relative to location.

o  *Telecommunications.*  Determined economic damages and performed a variety of economic analyses in a dispute involving a RBOC and a start-up digital carrier.

o  *Audio.*  Prepared fairness opinion for transaction involving IP rights involving hearing-related technology.

Medical, Pharmaceuticals and Biotechnology

o  *Medical Devices.*  Strategically evaluating and valuing patent rights relating to coating physical frames with polymers and absorbable fibers.

o  *Topical Ointment.*  Determined damages under Lanham Act claims of trademark infringement and unfair competition.

o  *Pacemaker and Pacemaker Software.*  Analyzing patent infringement damages in connection with patents involving methods of controlling pacemakers.

o  *Biotech/pharma Product.*  Determined the value of an enterprise with an exclusive license in the field of opthamology (macular degeneration) and a non-exclusive license in other fields.

o  *Coronary Stents and Surgical Devices (Neurovascular Intervention).*  Determined economic damages in connection with allegations of patent infringement.

o  *Catheters.*  Analyzed economic damages in connection with allegations of patent infringement.

o  *Pacemaker and Defibrillator Technology.*  Provided expert damages opinion in patent infringement matter.

o  *Pharmaceuticals.*  Determined reasonable royalty damages in connection with claims of patent infringement of HIV/AIDS drug therapy patents.

o  *Neutraceuticals.*  Quantified damages associated with inter-temporal values of blocks of shares, as well as analysis of solvency for the enterprise as a whole, in connection with highly leveraged transaction.

o  *Medical Practice.*  Analyzed damages stemming from insolvency of medical practice.

o  *Heartbeat Sensor Technology.*  Performed analysis of damages in connection with dispute concerning heartbeat detection technology.

o  *Medical Devices.*  Calculated reasonable royalty damages in matter involving prosthetics.

o  *Medical-Other*  Calculated patent infringement damages in other matters involving

| | |
|---|---|
| *Examples of Business*<br>*Experience*<br>*(continued)* | pharmaceuticals and biotechnology. |

<u>Automotive, Manufacturing and Heavy Industry</u>

o   *Automotive Hybrid Engine Patents.*   Provided consulting advice regarding the amount of a reasonable royalty under a post-trial, ongoing royalty rate scenario.

o   *Fluid Transportation*   Evaluated damages stemming from claims of fraud and breach of contract.

o   *Copyrighted Engineering Drawings for Automotive Manufacturing.*   Prepared damages analysis and provided expert testimony regarding alleged infringement of copyrighted drawings.

o   *Valuation of Minority Shareholder Interest in Automotive Industry.*   Conducted financial analysis on behalf of a minority shareholder for a potential additional investment of capital. Assignment led to litigation, where testimony was provided at deposition and trial.

o   *Automotive Patents – Design.*   Determined reasonable royalty damages in connection with alleged infringement of automotive field patents.

o   *Automotive Patents – Hybrid Engine Technology.*   Provided consulting assistance to determine size of market, damage estimation and associated negotiation strategies.

o   *Civil Engineering Drawings*   Determined copyright infringement damages in matter involving engineering drawings.

<u>Retail and Other</u>

o   *Media, Tickets and Professional Artists.*   Performed/reviewed various purchase price allocations (*i.e.* SFAS 141) involving celebrity merchandising and trade names, festival promotion rights, sponsorship contracts, and related non-compete agreements.

o   *Retail / Home Improvement*   Determined damages under Lanham Act/trademark infringement claims.

o   *Beverages.*   Provided expert opinion and testimony related to Lanham Act/copyright infringement claims involving a well-known brand name.  Analyzed the economic impact of alleged consumer confusion.

o   *Professional Practice.*   Valued a 50% interest in a professional services practice in connection with a disputed buyout.

o   *Retail Foods.*   Provided expert opinion regarding damages associated with unfair competition and theft of proprietary information.

o   *Consumer Product.*   Determined lost profit and reasonable royalty damages in connection with claims of patent infringement for a matter involving baby strolllers.

o   *Retail Foods.*   Provided an evaluation and recommendations regarding the business and operations strategies, including licensing versus making decisions, for a Latino consumer-products trademark and tradename expanding its reach in the U.S. marketplace.

| | |
|---|---|
| ***Examples of Business Experience (continued)*** | o  *Transportation and Fire Safety Products.* Determined the value of trademarks and patents in connection with an acquisition (*i.e.* SFAS 141). |

o  *Retail Foods.* Determined reasonable royalty damages in matter involving method for preparation and presentation of meat products.

o  *Writing Instruments.* Provided consulting assistance including research and financial analysis for mediation and license negotiation purposes.

o  *Sports/Broadcasting.* Determined economic damages in connection with breach of contract claims involving broadcasting of professional sporting teams.

o  *Professional Sports.* Determined trademark infringement damages in a matter involving professional sports franchises. Also determined value of TV and media rights contracts in a separate matter.

o  *Transaction/Bankruptcy.* Performed valuation of company and assets in connection with recapitalization.

o  *Bankruptcy.* Performed numerous valuations and valuation-related services, including pre- and post- filing assessments of value and proposed recapitalizations for debtors-in-possession, creditors' committees and trustees/receivers. Assignments have included preparation and critiques of plans of reorganization, insolvency, fraudulent conveyance and analyses of preferential payments.

o  *Other.* Determined economic damages and performed services in connection with valuation and financial-related disputes, including other matters involving the above industries, as well as other industries ranging from timber to telecommunications.

Energy and Process Industry

o  *Power Generation.* Determined economic damages using a market forecasting tool, together with statistical and real-options based valuation methodology. This assignment also involved determining lost profits using additional financial analysis. Arbitration panel awarded damages consistent with this damages model.

o  *Measurement Technology* Performed purchase price allocation (*i.e.* SFAS 141) and analyzed financial treatment of the acquisition of a patent portfolio relating to measurement while drilling techniques.

o  *Sampling Technology.* Submitted expert opinion regarding rebuttal of damages issues in patent infringement matter.

o  *Oilfield Services Technology.* Determined damages in connection with alleged breach of contract related to drilling technology.

o  *Tubular Technology.* Determined economic damages in connection with dispute regarding value of joint venture and associated contracts, market opportunities and customer relationships.

o  *Casing Technology.* Determined reasonable royalty damages in matter involving patents

for method of stringing casing.

o *Power Plant Construction.* Determined damages and submitted expert testimony associated with alleged breach of a contract to construct a base load power plant.

o *Power Generation.* Determined damages and provided testimony associated with breach of contract claim.

o *Chemicals.* Analyzed a complex series of transactions to determine alter ego and corporate veil claims of a major multinational company in CERCLA/Superfund litigation.

**Professional**
**and Business History**

*Duff & Phelps,* Managing Director (2008-present).

*Kroll,* Senior Director (2008), Director (2007-2008).

*CRA International (formerly InteCap),* Principal (2005-2006), Director (2002-2005).

*KPMG,* Manager, Global Financial Strategies (2001).

*Wartsila Corporation* (1995-2002); positions held include: Director, Business Development WDFS (2001-2002); Director of Finance, WDFS (2000-2001); Controller and Treasurer, Wartsila Power Development (1999-2000); Controller, Wartsila Netherlands (1998-1999); Controller and Manager of Finance, Wartsila North America (1995-1998).

*C.W. Amos & Company,* Consulting Supervisor (1995), Senior Consultant (1993-1994).

*Andersen Consulting (now Accenture),* Consultant (1990-1991).

Duff&Phelps

**W. Christopher Bakewell**
Managing Director

1111 Bagby, Suite 1900
Houston, Texas 77002
(713) 237-5336
chris.bakewell@duffandphelps.com

## Expert Testimony and Disclosures

**United States District Court, Eastern District of Texas, Marshall Division**
Soverain Software, LLC v. Newegg Inc.,* et al. (Case 6:07-CV-00511-LED)
Deposition, Report

**United States District Court, Eastern District of Texas, Marshall Division**
Performance Pricing, Inc. v. Google, Inc.,* AOL LLC,* et al. (Case 2:07-CV-432-LED)
Deposition, Report

**United States District Court, Eastern District of Texas, Marshall Division**
Realtime Data, LLC D/B/A/ IXO v. Packeteer, Inc., Blue Coat Systems, Inc., Citrix Systems, Inc., Expand Networks, Inc., F5 Networks, Inc.,* et al. (Case No.: 6:08-CV-144-LED)
Deposition, Report

**United States District Court, Eastern District of Texas, Marshall Division**
Versata Software, Inc., f/k/a Trilogy Software, Inc.;* and Versata Development Group, Inc. f/k/a Trilogy Development Group, Inc.* v. SAP America, Inc. and SAP A.G. (Case No.: 2:07-CV-153-CE)
Trial, Deposition, Report

**District Court of Harris County, Texas**
James Hadfield,* Linda Hadfield* and Hadfield Communications, Inc.* v. Chari Kauffman, Garrett Kauffman and Diva Marketing Group, LLC (Cause No. 2008-32224)
Expert Designation

**United States District Court, Eastern District of Texas, Marshall Division**
Hitachi Plasma Patent Licensing Co., Ltd. v. LG Electronics, Inc.* and LG Electronics USA, Inc.* (Case No. 2:07-CV-155CE)
Deposition, Report

**United States District Court, Southern District of New York**
Woody Allen v. American Apparel, Inc.* (Civil Action No. 08 CV 3179)
Report

**United States District Court, Southern District of Texas, Houston Division**
Homax Products, Inc.* v. Homax, Inc. (Cause No. 4:08-CV-1560)
Report

**W. CHRISTOPHER BAKEWELL**
Managing Director

1111 Bagby, Suite 1900
Houston, Texas 77002
(713) 237-5336
chris.bakewell@duffandphelps.com

**United States District Court, Eastern District of Texas, Lufkin Division**
Seoul Semiconductor Company, Ltd.* v. Nichia Corporation, Nichia America Corporation and Daktronics, Inc. (Case No. 9:07-cv-273)
Report

**United States District Court, Southern District of Illinois**
MarcTec, LLC v. Johnson & Johnson* and Cordis Corporation* (Case No.: 3:07-cv-825-DRH-CJP)
Deposition, Report

**United States District Court, Northern District of Illinois, Eastern Division**
SPSS Inc. v. Norman H. Nie* and C. Hadlai Hull (Case No.: 08-C-66)
Deposition, Report

**United States District Court, Eastern District of Texas, Marshall Division**
Versata Software, Inc., f/k/a Trilogy Software, Inc.;* and Versata Development Group, Inc. f/k/a Trilogy Development Group, Inc.* v. Sun Microsystems, Inc. (Case No.: 2:06-CV-358-TJW)
Trial, Deposition, Report

**United States District Court, Northern District of California, San Jose Division**
Rambus, Inc. v. Samsung Electronics Co., Ltd.,* Samsung Semiconductor, Inc.,* Samsung Austin Semiconductor, L.P.,* Samsung Electronics America, Inc.,* Hynix Semiconductor, Inc., Nanya Technology Corporation et al. (Case Nos. C-05-0334 RMW and C-05-2298 RMW)
Deposition, Report

**United States District Court, District of Connecticut**
Sedona Corporation v. Open Solutions, Inc.* (Civil Action No. 3:07CV171 MRK)
Deposition, Report

**Private Arbitration, Austin, Texas**
Torquin LLC,* Russell Grigsby, and Peniel Investments, Ltd. v. Robert F. Hofmann, M.D.
Report

**United States District Court, Northern District of Texas, Dallas Division**
Joovy LLC* and Albert T. Fairclough v. Baby Trend, Inc., Taiwan Charwell Enterprises Co. Ltd., and Target Corporation (Case No.: Case No. 3:06-CV-0616 (P))
Deposition, Report

**W. CHRISTOPHER BAKEWELL**
Managing Director

1111 Bagby, Suite 1900
Houston, Texas 77002
(713) 237-5336
chris.bakewell@duffandphelps.com

**United States District Court, Eastern District of Texas, Lufkin Division**
BridgeLux, Inc. v. Cree, Inc.* (Case No.: 9:06-CV-00240-RHC)
Deposition, Report

**United States District Court, Eastern District of Texas, Marshall Division**
Visto Corporation* v. Good Technology, Inc. (Civil Action No.: 2:06-CV-39)
Report

**Superior Court of the State of California**
InSyst, Ltd.* v. Applied Materials, Inc. and Applied Materials Israel, Ltd. (Case No: 1-04-CV-024251)
Trial, Deposition, Report

**United States District Court, Southern District of Texas, Houston Division**
Red Bull North America, Inc. and Red Bull GmbH v. 1340 Tavern on Gray et al.* (Civil Action No. 06-2350)
Deposition, Report

**United States District Court, Eastern District of Michigan**
RKN Technology, LLC et al.* v. American Axle Manufacturing & Holding, Inc. (Civil Action No. 05-74210)
Deposition, Report

**American Arbitration Association**
BMC Software, Inc. v. NetIQ Corporation* (Case No. 70 133 00 688 03)
Report

**U.S. District Court, Eastern District of Texas, Marshall Division**
Eckhard U. Alt, M.D.* v. Medtronic, Inc. (Civil Action No. 6:06-CV-95)
Deposition, Report

**District Court of Travis County, 261st Judicial District**
Los Cucos Mexican Café, Inc.* v. Begnigno R. Sanchez et al. (Cause No. 2004-3-14551)
Report

**Supreme Court of the State of New York**
Proyectos y Construcciones Procisa, S.A. de C.V.* v. Continental Tire North America, Inc., Continental Automotive, Inc., and Continental Aktiengesellschaft
Trial, Deposition

DUFF&PHELPS

**W. CHRISTOPHER BAKEWELL**
Managing Director

1111 Bagby, Suite 1900
Houston, Texas 77002
(713) 237-5336
chris.bakewell@duffandphelps.com

**Confidential Private Arbitration**
Dispute involving two companies in the energy field (client was Defendant; names of parties are confidential)
Deposition, Report

**U.S. District Court, Southern District of New York**
Wartsila NSD Power Development, Inc.* v. La Compania de Electricidad de Puerto Plata, S.A. (Civil Action No. 00 Civ. 0774)
Deposition, Report

**American Arbitration Association**
Wartsila Diesel, Inc.* v. Black & Veatch International
Trial (Arbitration), Report

*Note: Client/party is denoted with ** *

Documents Reviewed

| | Bates Range | |
|---|---|---|
| GRB | 1 | 16 |
| GRB | 1775 | 1776 |
| GRB | 1791 | 1798 |
| GRB | 1799 | 1800 |
| GRB | 1801 | 1803 |
| GRB | 1803 | 1804 |
| GRB | 1960 | 1961 |
| GRB | 1962 | 1969 |
| GRB | 1986 | 1992 |
| GRB | 1993 | 2001 |
| GRB | 2002 | 2009 |
| RedBend | 539 | 558 |
| RedBend | 518 | 538 |
| RedBend | 559 | 578 |
| RedBend | 579 | 598 |
| RedBend | 599 | 617 |
| RedBend | 912 | 942 |
| RedBend | 2480 | |
| RedBend | 2481 | 2497 |
| RedBend | 2498 | |
| RedBend | 2499 | 2517 |
| RedBend | 2518 | 2538 |
| RedBend | 2539 | 2557 |
| RedBend | 2558 | |
| RedBend | 2559 | 2569 |
| RedBend | 2570 | |
| RedBend | 2582 | |
| RedBend | 2583 | 2591 |
| RedBend | 2592 | |
| RedBend | 2593 | 2597 |
| RedBend | 2598 | |
| RedBend | 2599 | 2603 |
| RedBend | 2604 | |
| RedBend | 2605 | 2609 |
| RedBend | 2610 | |
| RedBend | 2611 | 2615 |
| RedBend | 2616 | 2617 |
| RedBend | 2618 | 2622 |
| RedBend | 2625 | |
| RedBend | 2626 | 2630 |
| RedBend | 2632 | 2636 |
| RedBend | 3011 | 3031 |
| RedBend | 3032 | 3074 |
| RedBend | 3075 | 3092 |
| RedBend | 3093 | 3105 |
| RedBend | 3106 | 3118 |
| RedBend | 3133 | 3150 |
| RedBend | 3151 | 3164 |
| RedBend | 3165 | 3195 |
| RedBend | 3208 | 3226 |
| RedBend | 3196 | 3197 |
| RedBend | 3243 | 3258 |
| RedBend | 3269 | 3271 |
| RedBend | 3272 | 3295 |
| RedBend | 3296 | 3315 |
| RedBend | 3316 | 3360 |
| RedBend | 3367 | 3443 |
| RedBend | 3444 | 3462 |
| RedBend | 3480 | 3490 |
| RedBend | 3493 | 3512 |
| RedBend | 3513 | 3527 |
| RedBend | 3528 | 3548 |
| RedBend | 3560 | 3609 |
| RedBend | 3610 | 3774 |
| RedBend | 3775 | 3792 |
| RedBend | 3793 | 3846 |
| RedBend | 3849 | 3876 |
| RedBend | 3882 | 3984 |
| RedBend | 4074 | 4097 |
| RedBend | 4142 | 4159 |
| RedBend | 4160 | 4178 |
| RedBend | 4179 | 4225 |
| RedBend | 4226 | 4269 |
| RedBend | 4270 | 4274 |
| RedBend | 4275 | 4292 |
| RedBend | 4311 | 4316 |
| RedBend | 4320 | 4368 |
| RedBend | 4369 | 4396 |
| RedBend | 4409 | 4410 |
| RedBend | 4412 | 4435 |
| RedBend | 4436 | 4443 |
| RedBend | 4448 | 4491 |
| RedBend | 4500 | 4524 |

| | | |
|---|---|---|
| RedBend | 4525 | 4561 |
| RedBend | 4562 | 4563 |
| RedBend | 4566 | 4626 |
| RedBend | 4645 | 4667 |
| RedBend | 4668 | 4696 |
| RedBend | 4720 | 4741 |
| RedBend | 4742 | 4758 |
| RedBend | 4778 | 4831 |
| RedBend | 4889 | 4888 |
| RedBend | 5022 | 5050 |
| RedBend | 5057 | 5087 |
| RedBend | 5101 | 5115 |
| RedBend | 5116 | 5126 |
| RedBend | 5169 | 5174 |
| RedBend | 5450 | 5456 |
| RedBend | 5463 | 5482 |
| RedBend | 5575 | 5581 |
| RedBend | 5589 | 5598 |
| RedBend | 5665 | 5666 |
| RedBend | 5757 | 5762 |
| RedBend | 5876 | |
| RedBend | 5877 | 5879 |
| RedBend | 6579 | 6581 |
| RedBend | 6582 | 6587 |
| RedBend | 7896 | 7913 |
| RedBend | 8306 | 8318 |
| RedBend | 8323 | 8373 |
| RedBend | 8542 | 8566 |
| RedBend | 8754 | 8845 |
| RedBend | 9056 | 9084 |
| RedBend | 9240 | 9247 |
| RedBend | 9278 | |
| RedBend | 9280 | |
| RedBend | 9301 | |
| RedBend | 9373 | 9403 |
| RedBend | 9674 | 9700 |
| RedBend | 9824 | 9836 |
| RedBend | 10287 | 10289 |
| RedBend | 10332 | 10333 |
| GOOG | 26258 | |
| GOOG | 26259 | 26265 |
| GOOG | 26266 | 26269 |
| GOOG | 26738 | 26742 |
| GOOG | 27268 | 27271 |
| GOOG | 36983 | 36985 |
| GOOG | 36986 | 37011 |
| GOOG | 37012 | 37014 |
| GOOG | 37015 | 37060 |
| GOOG | 37061 | 37064 |
| GOOG | 37065 | 37104 |

**Pleadings**
Declaration of Stephen A Edwards in Support of Plaintiff's Motion for a Preliminary Injunction Enjoining Google's Infringement
Memorandum in Support of Plaintiff's Motion for a Preliminary Injunction Enjoining Google's Infringement
Declaration of Jennifer C Tempesta in Support of Plaintiff's Motion for a Preliminary Injunction Enjoining Google's Infringement
Declaration of Yoram Salinger in Support of Plaintiff's Motion for a Preliminary Injunction Enjoining Google's Infringement, November 17 2009
Plaintiff's Motion for a Preliminary Injunction Enjoining Google's Infringement
Plaintiff's Motion for an Expedited Hearing on their Motion for a Preliminary Injunction Enjoining Google's Infringement
First Amended Complaint
Notice of Subpoena to W Christopher Bakewell
Declaration of Yoram Salinger in Opposition to Google's Emergency Motion for Modification of the Preliminary Injunction Briefing Schedule November 25 2009

**Depositions**
Deposition and Exhibits of Yoram Salinger February 17 2010
Deposition and Exhibits of Stephen A Edward February 9 2010

**Other**
12/15/2009 Letter to Susan Manning Re Google's Objections to Red Bend
35 U S C § 284
Georgia-Pacific Corp v U S Plywood Corp 318 F Supp 1116 (S D N Y 1970) modified and affirmed 446 F 2d 295 (2nd Cir 1971) cert denied 404 US 870 (1971)
*Automated Merchandising Systems Inc v Crane Co* 2009 WL 4878643 (Fed Cir Dec 16 2009)
*Nutrition 21 v United States* 930 F 2d 867 871 (Fed Cir 1991)
Internal Revenue Code §482

**Research**
CapitalIQ Private Company Profile Red Bend Software, Inc
Galbraith Mike Wireless Asia. Late-comer takes center stage in FOTA ' Oct/Nov 2007
Google Inc Form 10-K for the fiscal year ended December 31 2008
Google Inc Company Profile Datamonitor, January 2007
Google Inc Edwards & Sons Inc March 28 2007
http://dictionary law com/Default aspx?selected=823
http://www cbc ca/technology/story/2008/09/01/google-browser html
http://www redbend com/news/view_article asp?ID=883&TpeID=1
http://www redbend com/pdf/CorporateProfile pdf

http://www.gartner.com/it/page.jsp?id=1215932
http://www.youtube.com/watch?v=5JvFbF7QFlY
Pratt, Shannon, Reilly, Robert, and Schweihs, Robert. Valuing a Business. McGraw-Hill
Statement of Financial Accounting Standards No. 141 (revised 2007). Financial Accounting Standards Board
Support for device management in mobile handsets, 2007-2009 (3Q07 update). Ovum. April 23, 2008. Adam Leach
*Support for device management in mobile handsets, 2007-2009 (4Q07 update). Ovum. July 30, 2008. Adam Leach*
Support for device management in mobile handsets, 2008-2010 (3Q08 update). Ovum. March 11, 2009. Adam Leach
Support for device management in mobile handsets, 2008-2011 (4Q08 update). Ovum. September 8, 2009. Adam Leach
Parr, Russell L. *Intellectual Property Infringement Damages*